IN THE UNITED STATES DISTRICT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CANDACE RAY** | : | CIVIL ACTION NO. |
| 1350 High Avenue | : | |
| Roslyn, PA  19001 | : | |
| | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| **ABINGTON TOWNSHIP** | : | |
| 1176 Old York Road | : | |
| Abington, PA  19001 | : | |
|     and | : | |
| **CHIEF OF POLICE WILLIAM KELLY** | : | |
| 1116 Old York Road | : | |
| Abington, PA  19001 | : | |
|     and | : | |
| **POLICE OFFICER NISBET, S.** | : | |
| Badge No:  2933 | : | |
| 1116 Old York Road | : | |
| Abington, PA 19001 | : | |
|     and | : | |
| **POLICE OFFICER J. KING** | : | |
| Badge No.:  2530 | : | |
| 1116 Old York Road | : | |
| Abington, PA  19001 | : | |
|     and | : | |
| **POLICE OFFICER BRUCE HASLAM** | : | |
| 1116 Old York Road | : | |
| Abington, PA 19001 | : | |
|     and | : | |
| **POLICE OFFICER MATZ** | : | |
| 1116 Old York Road | : | |
| Abington, PA 19001 | : | |
|     and | : | |
| **POLICE OFFICER RAWTZ** | : | |
| 1116 Old York Road | : | |
| Abington, PA 19001 | : | |
|     and | : | |
| **POLICE OFFICER SCHOLL** | : | |
| 1116 Old York Road | : | |
| Abington, PA 19001 | : | |
|     and | : | |

| | |
|---|---|
| **(defendants continued)** | : |
| **POLICE OFFICER MANN** | : |
| **116 Old York Road** | : |
| **Abington, PA 19001** | : |
|   **and** | : |
| **ABINGTON MEMORIAL HOSPITAL** | : |
| **3941 Commerce Avenue** | : |
| **Willow Grove, PA 19090** | : |
|   **and** | : |
| **MARK SHNEA** | : |
| **3941 Commerce Avenue** | : |
| **Willow Grove, PA 19090** | : |

## CIVIL ACTION - COMPLAINT

Plaintiff, Candace Ray by and through her attorneys, Frost and Zeff, brings this Complaint against the defendants and in support thereof alleges as follows:

### INTRODUCTION

1. This Action for declaration, injunctive, monetary and other appropriate relief is brought by Plaintiff Candace Ray to redress the intentional violations by the defendants of the rights secured to plaintiff by the laws of the United States of America and the Statutory and Common Law of the Commonwealth of Pennsylvania.

### JURISDICTION AND VENUE

2. This action is brought pursuant to 28 USC Sections 1331 and 1343 (3) and the aforementioned statutory constitutional provisions. Plaintiff further invokes the pendent jurisdiction of this court to consider claims arising under state law.

3. Venue is appropriately laid in the District of Pennsylvania pursuant to 28 U.S.C. Section 1391(b) as it is the judicial district in which the claims asserted herein arose and because all parties reside in this district.

4. The amount in controversy exceeds ONE HUNDRED THOUSAND

($100,000.00) DOLLARS exclusive of interests and costs.

## PARTIES

5. Plaintiff, Candace Ray, (hereinafter referred to as "Plaintiff Ray") is a citizen of the Commonwealth of Pennsylvania residing at the above address, who has medical history of bi-polar disorder.

6. Defendant, Abington Township, (hereinafter referred to as "township") is a local agency of the Commonwealth of Pennsylvania doing business at the above captioned address.

7. Defendant, Police Chief William Kelly, , (hereinafter referred to as "Defendant/Chief"), Badge No.: unknown is a citizen and resident of the Commonwealth of Pennsylvania employed at the above address as the Abington Township Police Chief. He is sued in his individual and official capacity.

8. Defendant/Police Officer J. King, (hereinafter referred to as "Defendant King") Badge No.: 2530, is a citizen and resident of the Commonwealth of Pennsylvania employed at the above address as an Abington Township Police Officer. He is sued in his individual and official capacity.

9. Defendant Police Officer, S. Nisbet, (hereinafter referred to "Defendant Nisbet"), Badge No.: 2933, is a citizen and resident of the Commonwealth of Pennsylvania employed at the above address as an Abington Township Police Officer. He is sued in his individual and official capacity.

10. Defendant Police Officer, Bruce Haslam, Badge Number unknown is a citizen and resident of the Commonwealth of Pennsylvania employed at the above address as an Abington Township Police Officer. He is sued in his individual and official capacity.

11. Defendant Police Officer, Hatz, Badge Number unknown is a citizen and resident

of the Commonwealth of Pennsylvania employed at the above address as an Abington Township Police Officer. He is sued in his individual and official capacity.

12. Defendant Police Officer, Rawtz Badge Number unknown is a citizen and resident of the Commonwealth of Pennsylvania employed at the above address as an Abington Township Police Officer. He is sued in his individual and official capacity.

13. Defendant Police Officer Scholl, Badge Number unknown is a citizen and resident of the Commonwealth of Pennsylvania employed at the above address as an Abington Township Police Officer. He is sued in his individual and official capacity.

14. Defendant Police Officer Mann, Badge Number unknown is a citizen and resident of the Commonwealth of Pennsylvania employed at the above address as an Abington Township Police Officer. He is sued in his individual and official capacity.

15. Defendant Abington Memorial Hospital, (hereinafter referred to as Defendant Hospital"), is a local area hospital operating and doing business at the above captioned address.

16 Defendant Mark Shnea (hereinafter referred to as Defendant Shnea), is an intake crisis staff worker at Defendant Abington Memorial Hospital, at the above-captioned address. He is sued in his individual and professional capacity as an agent of Defendant Hospital.

17. At all times relevant hereto. Defendant police officers were acting under color of state law.

## FACTS
## DOMESTIC DISPUTE

18. On or about July 2, 2000, the Abington police were called to the home of plaintiff, Candace Ray, due to a domestic dispute.

19. Plaintiff Ray has a medical history of bi-polar disorder, and was having a bi-polar

episode on July 2, 2000, at the time of the domestic disturbance.

20. At all times relevant hereto, Mr. Jon R. Grob was plaintiff's fiancee.

21. Plaintiff Ray did not wish to press any charges against her fiancee, and requested that the police allow Mr. Grob to voluntarily leave the premises.

22. The Abington Police arrested Mr. Grob without consideration of plaintiff's Ray's request.

23. At all times relevant hereto, Mr. Chris Stewart was a friend of plaintiff Ray and her fiancee.

24. Plaintiff Ray was distraught over her fiancee's arrest and contacted Chris Stewart to help bail Mr. Grob from jail.

## PLAINTIFF RAY'S FIANCEE'S ARRAIGNMENT

25 Plaintiff Ray went to her fiancee's arraignment to bail him out.

26. Plaintiff Ray was told to leave the arraignment.

27. Plaintiff Ray did voluntarily leave the arraignment, even though this was a public hearing.

28. Plaintiff Ray then drove off of the premises, but inadvertently drove the wrong way and turned the car around.

29. Plaintiff Ray made a right onto Mt. Vernon and she stopped in front of the District Magistrates Building, (Court 38-1-05) on Easton Road, still in her car.

30. Plaintiff Ray was not in the parking lot of the District Magistrate's Building, which is in front of said building.

31. Plaintiff Ray was stopped on Mt. Vernon Road.

32. It was plaintiff's intent to find out what her fiancee's bail was so that she could

pay it.

33. Plaintiff Ray was talking on a C.B. radio to Mr. Chris Stewart, and said "a policeman is coming".

34. Plaintiff waited in her car, and defendant Nisbet approached plaintiff's car on the passenger's side.

35. Plaintiff's car rolled forward.

36. Defendant Nisbet was accidentally knocked down because his head and upper body were inside of plaintiff's car window.

37. Defendant Nisbet did not receive any medical treatment for this incident.

38. Instead defendant Nisbet grabbed the keys out of the ignition of plaintiff's car.

39. Upon information and belief, this incident was seen from the court room by Magistrate Price, defendant King, plaintiff's fiancee, guards, and other police officers.

40. Plaintiff Ray's fiancee was then locked in a closet inside of the courtroom.

41. Defendant King came running out of the courtroom, and grabbed plaintiff Ray's left arm (through the driver's side window).

42. Plaintiff Ray was in the car, frightened and screaming, while defendant Nisbet and King held plaintiff's right and left arms extended.

43. Defendant King then asked defendant Nisbet "if he wanted to ..."

44. Defendant Nisbet yelled "yeah do it!".

45. With this, defendant King emptied an entire canister of pepper spray onto plaintiff Ray's face.

46. Plaintiff Ray's fiancee could hear plaintiff's screams of pain, from inside the courtroom, and Chris Stewart could hear plaintiff screaming and crying via C.B. radio.

47. Defendant King said "I used the whole damn can!".

48. Plaintiff Ray's hair was saturated with pepper spray.

49. At this time, 3 to 4 police cars came upon the scene.

50. Defendant Bruce Haslam and an unidentified lieutenants were talking on radios and giving instructions.

51. Plaintiff Ray told Mr. Chris Stewart, (via C.B. radio) "they are arresting me".

52. At that point, Officer Nisbet pulled plaintiff's C.B. radio microphone out of the car completely, and later the entire radio was pulled out.

53. Defendant Officer King and other officers put plaintiff Ray into a police car, because she was placed under arrest.

54. Plaintiff was not read her <u>Miranda</u> warning.

55. Due to plaintiff being in imminent fear for her safety, she again had a bi-polar episode.

## THE ABINGTON POLICE STATION

56. Plaintiff Ray immediately requested that she be taken to the hospital because the pepper spray was burning her.

57. Plaintiff's request for medical attention was initially ignored.

58. Once plaintiff was taken to the Abington Police Station, plaintiff was brought to an area between the cells.

59. Plaintiff Ray was isolated and forcibly stripped naked and hosed down with water, while 5 to 6 male police officers watched, made lewd lascivious comments, tormented, taunted, imitated her crying, and ridiculed plaintiff Ray.

60. All of plaintiff's clothing was taken from her and placed in a locker.

61. One police officer called plaintiff a "cry baby" and another called her a "bitch".

62. Plaintiff Ray was crying hysterically and handcuffed during this entire ordeal.

63. The pepper spray ran down into plaintiff Ray's vagina and posterior, and severely burned her body.

64. Plaintiff Ray's fiancee saw plaintiff Ray with her clothes off, crying, with officers all around plaintiff, ostracizing her, and tormenting her.

65. Plaintiff Ray's fiancee told police that plaintiff was bi-polar, and having an episode due to her disorder.

66. Plaintiff Ray was eventually given a paper dress, and put in a wet cell.

67. Plaintiff Ray continued to cry in pain from being burnt from the pepper spray, and periodically requested to go to the hospital.

68. Approximately six hours later plaintiff Ray was taken to defendant Abington Hospital.

## WHILE AT DEFENDANT ABINGTON HOSPITAL

69. Plaintiff was given many unidentified shots/units of medication, which seemed to bring her out of her out of her bi-polar episode.

70. Defendant Mark Shnea was brought in to do an evaluation on plaintiff Ray.

71. Defendant Marc Shnea told police officers (at the nurses station) "lock her up and throw away the key".

72. Defendant Marc Shnea revealed plaintiff's medical history to the police officers.

73. Defendant Mark Shnea told police officers that plaintiff Ray was not currently taking medication, and that she refuses to take medication.

74. As a result, plaintiff was put into four point restraints.

75. Mark Shnea and defendant Nisbet then falsified hospital records and police reports in order to have plaintiff involuntarily committed pursuant to the Pennsylvania Mental Health Act.

76. Defendant, Mark Shnea assisted defendants Nisbet and King with Mental Health Act paperwork and arranged for a Montgomery County Emergency Services Ambulance to pickup plaintiff for 120 hours of involuntary commitment.

77. Upon information and belief, plaintiff was not afforded the proper procedures for involuntary commitment.

**MONTGOMERY COUNTY EMERGENCY SERVICES BUILDING 50**

78. At all times relevant hereto, Michael Johns was a Public Defender.

79. Michael Johns came to Montgomery County Emergency Services, (herein after referred to as building 50) and told plaintiff Ray he was there to represent her in a competency hearing.

80. Michael Johns told plaintiff that she could not come to the hearing because the police were coming to pick her up to re-arrest her.

81. As a result of learning that she would be re-arrested, plaintiff Ray then called Magistrate Dougherty's Office and was told by Mr. George Griffith that Magistrate Dougherty and Magistrate Price were together and were contemporaneously issuing an arrest warrant because plaintiff was not at her 9:00 criminal hearing.

82. Plaintiff Ray was unaware of any criminal charges, because she had been involuntarily committed.

83. Upon information and belief, plaintiff was not properly notified of her involuntary commitment.

84. Judge Maurino Rossanese, Jr. later sent a letter (for plaintiff Ray) stating that there was no court ordered mental treatment in regard to Commonwealth v. Candace Ray.

## PLAINTIFF'S ARRAIGNMENT

85  Subsequent to plaintiff Ray's re-arrest,(at building 50) she was arraigned by Judge Silverman.

86. Judge Silverman told plaintiff "if you sign the Miranda warning you'll go home now, if you're not going to sign the miranda you're going to go to jail".

87. Plaintiff did not sign the Miranda, because she stated "I don't remember reading my miranda rights".

88. Officer Mann had told Judge Silverman "to throw the book at her because she ran down a policemen with her car."

89. Plaintiff Ray was taken back to the Abington Police Station on 7-7-00, it was at this time that plaintiff attempted suicide in her cell.

## PRISON

90  Subsequently, plaintiff Ray was then taken to the Montgomery County Prison.

91. Plaintiff Ray was in Montgomery County Prison for approximately 6 days.

92. Plaintiff Ray had bail papers stating that her bail was $5,000.00 but she was listed as no bail.

93. Plaintiff Ray was put in a paper dress and put on suicide watch.

94. When plaintiff would go to utilize the bathroom the correction officers would watch her, because plaintiff was physically exposed, due to her paper dress ripping while sleeping.

95. Plaintiff Ray felt demeaned and humiliated by this experience.

96. Upon plaintiff's release from prison, she was afraid to go anywhere for fear of Abington Police.

97. While plaintiff Ray was in prison the Abington Police had attempted to gain entry to her house to search it without a warrant.

## COUNT 1
### PLAINTIFF v. DEFENDANTS, CHIEF OF POLICE WILLIAM KELLY, POLICE OFFICER S. NISBET, POLICE OFFICER J. KING, POLICE OFFICER BRUCE HASLAM, POLICE OFFICER MATZ, POLICE OFFICER RAWTZ, POLICE OFFICER SCHOLL POLICE OFFICER MANN
### CIVIL RIGHTS VIOLATIONS

98. Plaintiff adopts and incorporates by reference paragraphs one (1) through one ninety seven (97) herein set forth at length.

99. Defendants used excessive force and failed to provide Plaintiff with medical care for her serious medical condition, thereby violating her rights under the laws of the laws of the Constitution of the United States, in particular, the Fourth and Fourteenth Amendments, and her rights under the Constitution and laws of the Commonwealth of Pennsylvania.

100. Without any justification and provocation, Defendants willfully and maliciously caused the Plaintiff to suffer injuries.

101. As a direct and proximate result of the aforesaid acts of the Defendant Police Officers committed under color of their authority as Abington Township Police Officers, caused Plaintiff to suffer grievous bodily harm which is a violation by the Defendant Police Officers of the laws and Constitution of the United States, in particular, the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. Sections 1983, 1985(3), 1986 and 1988 and was further in violation of the Statutes of the Commonwealth of Pennsylvania and the

Constitution of the United States all of which makes the said Defendants liable to Plaintiff.

102. The acts committed by the Defendants constitutes intentional misconduct, excessive use of force, negligence, gross negligence and deliberate indifference which caused the previously described bodily injuries to the Plaintiff, monies for legal fees, and other economic losses in violation of her constitutional rights as previously set forth in the aforementioned paragraphs. The acts constitute an excessive use of force all in violation of the Fourth and Fourteenth Amendments to the Constitution and 42 U.S.C. Section 1983.

WHEREFORE, Plaintiff demands judgment against the Defendants in an amount in excess of One Hundred Thousand Dollars ($100,000.00) plus interest, costs, attorney's fees and punitive damages in their individual capacities.

## COUNT II
### PLAINTIFF vs. DEFENDANT TOWNSHIP OF ABINGTON
### CIVIL RIGHTS VIOLATIONS

103. Plaintiff adopts and incorporates by reference paragraphs one (1) through one hundred two (102) herein set forth at length.

104. Upon information and belief, the Defendant Township and Police Officers have repeatedly and knowingly failed to enforce the laws of the United States, the Commonwealth of Pennsylvania and the regulations of the Township pertaining to the use of force thereby creating within the Commonwealth of Pennsylvania an atmosphere of lawlessness in which Police Officers employ excessive and illegal force and violence, and such acts are condoned and justified by their superiors.

105. Prior to July 2000, the Township developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in Abington which caused the Plaintiff's rights to be violated

106. It was the policy and/or custom of the Township to inadequately and improperly investigate citizen complaints of police misconduct and acts of misconduct were instead tolerated by the Township.

107. It was the policy and/or custom of the Township to inadequately supervise and train its Police Officers, including the Defendant Officers, thereby failing to discourage further constitutional violations on the part of its Police Officers. The Township did not require appropriate in-service training or retraining of Officers who were known to have engaged in police misconduct.

108. As a result of the above-described policies and customs, Police Officers of the Township, including the Defendant Police Officers, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

109. The above-described policies and customs demonstrated a deliberate indifference on the part of policymakers of the Township to the constitutional rights of Plaintiff's right alleged herein.

110. Upon information and belief, Defendant Township Police Department have failed to provide training and supervision regarding the lawful use of force to Police Officers which constitutes negligence, gross negligence and deliberate indifference to the safety and lives of the citizens of the Commonwealth of Pennsylvania. The said negligence, gross negligence and deliberate indifference was a proximate cause of Plaintiff's injuries.

WHEREFORE, Plaintiff demands judgment against the Defendants in an amount in excess of One Hundred Thousand Dollars ($100,000.00) plus interest, costs and attorney's fees.

## COUNT III
## PLAINTIFF vs. ALL DEFENDANTS
## ASSAULT AND BATTERY

111.   Plaintiff adopts and incorporates by reference paragraphs one (1) through one hundred ten (110) herein set forth at length.

112.   The Defendants wilfully, intentionally, and maliciously inflicted assaults and batters upon Plaintiff, causing her the damages described above.

WHEREFORE, Plaintiff demands judgment against the Defendants in an amount in excess of One Hundred Thousand Dollars ($100,000.00) plus interest, costs, attorney's fees and punitive damages against the Defendant Police Officers in their individual capacities.

## COUNT IV
## PLAINTIFF v. DEFENDANT POLICE OFFICERS AND TOWNSHIP OF ABINGTON
## VIOLATION OF SUBSTANTIVE DUE PROCESS RIGHTS

113.   Plaintiff adopts and incorporates by reference paragraphs one (1) through one hundred twelve (112) herein set forth at length.

114.   The actions of defendants, jointly and severally have deprived plaintiff of life and/or liberty in violation of her substantive rights to due process under the Fourth and Fourteenth Amendments and 42 U.S.C. Section 1983.

WHEREFORE, Plaintiff demands judgment against the Defendants in an amount in excess of One Hundred Thousand Dollars ($100,000.00) plus interest, costs, attorney's fees and punitive damages against the Defendant Police Officers in their individual capacities.

## COUNT V
## PLAINTIFF v. POLICE OFFICERS AND TOWNSHIP OF ABINGTON
## VIOLATION OF CIVIL RIGHTS

115.   Plaintiff adopts and incorporates by reference paragraphs one (1) through one

hundred fifteen (114) herein set forth at length.

116. The actions of defendants violates plaintiff's rights under the Fourth and Fourteenth Amendments and 42 U.S.C. Section 1983 to be free from illegal searches and seizures.

WHEREFORE, Plaintiff demands judgment against the Defendants in an amount in excess of One Hundred Thousand Dollars ($100,000.00) plus interest, costs, attorney's fees and punitive damages against the Defendant Police Officers in their individual capacities.

## COUNT VI
### PLAINTIFF v. POLICE OFFICERS AND TOWNSHIP OF ABINGTON
### VIOLATION OF PRIVACY

117. Plaintiff adopts and incorporates by reference paragraphs one (1) through one hundred sixteen (116) herein set forth at length.

118. The actions of defendants violate plaintiff's constitutional right to privacy under the First, Fourth, Fifth and Ninth and Fourteenth Amendments and 42 U.S.C. Section 1983.

WHEREFORE, Plaintiff demands judgment against the Defendants in an amount in excess of One Hundred Thousand Dollars ($100,000.00) plus interest, costs, attorney's fees and punitive damages against the Defendant Police Officers in their individual capacities.

## COUNT VII
### PLAINTIFF v. POLICE OFFICERS AND TOWNSHIP OF ABINGTON
### VIOLATION OF FIRST AMENDMENT

119. Plaintiff adopts and incorporates by reference paragraphs one (1) through one hundred eighteen (118) herein set forth at length.

120. The actions of defendants violates plaintiff's rights under the First Amendment and 42 U.S.C. Section 1983.

WHEREFORE, Plaintiff demands judgment against the Defendants in an amount in excess of One Hundred Thousand Dollars ($100,000.00) plus interest, costs, attorney's fees and punitive damages against the Defendant Police Officers in their individual capacities.

## COUNT VII
## PLAINTIFF v. POLICE OFFICERS AND TOWNSHIP OF ABINGTON
## VIOLATION OF FIFTH AND SIXTH AMENDMENTS

121.    Plaintiff adopts and incorporates by reference paragraphs one (1) through one hundred twenty (120) herein set forth at length.

122.    The actions of defendants violates plaintiff's rights under the Fifth and Sixth Amendments 42 U.S.C. Section 1983 to counsel and a fair trial.

WHEREFORE, Plaintiff demands judgment against the Defendants in an amount in excess of One Hundred Thousand Dollars ($100,000.00) plus interest, costs, attorney's fees and punitive damages against the Defendant Police Officers in their individual capacities.

## COUNT IX
## PLAINTIFF v. CHIEF OF POLICE AND TOWNSHIP OF ABINGTON
## FAILURE TO TRAIN

123.    Plaintiff adopts and incorporates by reference paragraphs one (1) through one hundred twenty-two (122) herein set forth at length.

124.    The above described conduct could have been avoided had the Township of Abington and the Chief of Police been training and/or providing proper training for dealing with plaintiff's condition. Upon information and belief, the Township of Abington had in place a policy and/or custom of improperly processing persons in plaintiff's condition in violation of 42 U.S.C. Section 1983.

WHEREFORE, Plaintiff demands judgment against the Defendants in an amount in

excess of One Hundred Thousand Dollars ($100,000.00) plus interest, costs, attorney's fees and punitive damages against the Defendant Police Officers in their individual capacities.

## COUNT X
## PLAINTIFF v. ABINGTON MEMORIAL HOSPITAL AND MARK SHNEA
## NEGLIGENCE

125. Plaintiff adopts and incorporates by reference paragraphs one (1) through one hundred twenty-four (124) herein set forth at length.

126. At all times material hereto the plaintiff was under the care and control of the defendant Abington Memorial Hospital and defendant police officers.

127. At all times material hereto, defendant Abington Memorial Hospital acting by and through its agents, servants and employees who were acting through the course and scope of their authority and in the business of defendant Abington Memorial Hospital.

128. At all times material herein, defendant Mark Shnea was an agent, servant and/or independent contractor for the defendant, Abington Memorial Hospital.

129. Upon information and belief, defendant Abington Memorial Hospital had in place at the time of plaintiff's treatment, policies practices and customs known to place persons with mental or emotional conditions in involuntary confinement without proper jurisdiction or legal authority.

130. The injuries, complications and conditions suffered by plaintiff were the direct and legal results of the negligence, gross negligence, deliberate indifferent, willful misconduct and intentional conduct of defendant Abington Memorial Hospital and defendant Shnea.

131. As direct proximate result of defendants conduct, plaintiff's condition has been exacerbated and she has been subjected to improper incarceration.

WHEREFORE, Plaintiff demands judgment against the Defendants in an amount in

excess of One Hundred Thousand Dollars ($100,000.00) plus interest, costs, attorney's fees and punitive damages.

## COUNT XI
## PLAINTIFF v. ALL DEFENDANTS
## FALSE IMPRISONMENT

132.   Plaintiff adopts and incorporates by reference paragraphs one (1) through one hundred thirty-one (131) herein set forth at length.

133.   The actions of defendants jointly and severally caused plaintiff to be falsely imprisoned against her will.

WHEREFORE, Plaintiff demands judgment against the Defendants in an amount in excess of One Hundred Thousand Dollars ($100,000.00) plus interest, costs, attorney's fees and punitive damages against all Defendants subject to punitive damages.

## COUNT XII

## PLAINTIFF v. ALL DEFENDANTS

## VIOLATION OF PENNSYLVANIA MENTAL HEALTH ACT

134.   Plaintiff adopts and incorporates by reference paragraphs one (1) through one hundred thirty-three (133) herein set forth at length.

135.   The actions of all defendants jointly and severally have violated the Pennsylvania Mental Health Act and plaintiff's right to due process in violation of the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. Section 1983.

WHEREFORE, Plaintiff demands judgment against the Defendants in an amount in excess of One Hundred Thousand Dollars ($100,000.00) plus interest, costs, attorney's fees and punitive damages against all Defendants subject to punitive damages.

## COUNT XIII
## PLAINTIFF v. ABINGTON MEMORIAL HOSPITAL AND SHNEA
## INVASION OF PRIVACY

136. Plaintiff adopts and incorporates by reference paragraphs one (1) through one hundred thirty-five (135) herein set forth at length.

135. The actions of all defendant Abington Memorial Hospital and Shnea constitute an invasion of privacy of plaintiff.

WHEREFORE, Plaintiff demands judgment against the Defendants in an amount in excess of One Hundred Thousand Dollars ($100,000.00) plus interest, costs, attorney's fees and punitive damages.


FROST & ZEFF


BY: _____
Gregg L. Zeff, Esquire
Pier Five at Penn's Landing
7 North Columbus Boulevard
Philadelphia, PA  19106
Attorney for Plaintiffs