IN THE UNITED STATES DISTRICT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **CANDACE RAY** | : | CIVIL ACTION NO. 02-CV-4382 |
|  | : |  |
| v. | : | JURY TRIAL DEMANDED |
|  | : |  |
| **ABINGTON TOWNSHIP,** | : |  |
| **CHIEF OF POLICE WILLIAM KELLY** | : |  |
| **POLICE OFFICER NISBET, S.** | : |  |
| **BADGE NO. 2933,** | : |  |
| **POLICE OFFICER J. KING** | : |  |
| **BADGE NO. 2530,** | : |  |
| **POLICE OFFICER BRUCE HASLAM** | : |  |
| **POLICE OFFICER MATZ,** | : |  |
| **POLICE OFFICER RAWLS,** | : |  |
| **POLICE OFFICER SCHOLL,** | : |  |
| **POLICE OFFICER MANN,** | : |  |
| **ABINGTON MEMORIAL HOSPITAL,** | : |  |
| **and MARK SHNEE.** | : |  |
|  | : |  |

## ORDER

**AND NOW**, this          day of          2003, it is hereby **ORDERED** that Defendants', Abington Memorial Hospital and Mark Schnee, Motion for Summary Judgment is **DENIED.**

_____
J.

IN THE UNITED STATES DISTRICT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CANDACE RAY : | CIVIL ACTION NO. 02-CV-4382 |
| : | |
| v. : | JURY TRIAL DEMANDED |
| : | |
| ABINGTON TOWNSHIP, : | |
| CHIEF OF POLICE WILLIAM KELLY : | |
| POLICE OFFICER NISBET, S. : | |
| BADGE NO. 2933, : | |
| POLICE OFFICER J. KING : | |
| BADGE NO. 2530, : | |
| POLICE OFFICER BRUCE HASLAM : | |
| POLICE OFFICER MATZ, : | |
| POLICE OFFICER RAWTZ, : | |
| POLICE OFFICER SCHOLL, : | |
| POLICE OFFICER MANN, : | |
| ABINGTON MEMORIAL HOSPITAL, : | |
| and MARK SHNEE. : | |
| : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF CANDACE RAY'S RESPONSE TO DEFENDANTS', ABINGTON MEMORIAL HOSPITAL AND MARK SCHNEE, MOTION FOR SUMMARY JUDGMENT**

**I.   BACKGROUND**

On July 2, 2000, the Abington police were called to the home of plaintiff, Candace Ray, due to a domestic dispute with her fiancé, Jon Grob. (Plaintiff's Amended Complaint ¶ 18, a copy of Plaintiff's Amended Complaint is attached hereto as Exhibit "A"). Plaintiff Ray did not wish to press any charges against her fiancee, and requested that the police allow Mr. Grob to voluntarily leave the premises. However, the Abington Police arrested Mr. Grob without consideration of plaintiff's Ray's request. Plaintiff was distraught over her fiancee's arrest and contacted Chris Stewart to help bail Mr. Grob from jail. Id. at ¶¶ 18-24.

Plaintiff went to her fiancee's arraignment to bail him out, and was told to leave even

though it was a public hearing.  Plaintiff then drove off of the premises, but inadvertently drove the wrong way and turned the car around.  Plaintiff made a right onto Mt. Vernon and she stopped in front of the District Magistrates Building, (Court 38-1-05) on Easton Road, still in her car.  It was plaintiff's intent to find out what her fiancee's bail was so that she could pay it.  Plaintiff was talking on a C.B. radio to Mr. Chris Stewart when defendant Nisbet approached Plaintiff's car on the passenger's side.  Plaintiff's car rolled forward and Defendant Nisbet was accidentally knocked down because his head and upper body were inside of plaintiff's car window.  Defendant Nisbet did not receive any medical treatment for this incident and instead grabbed the keys out of the ignition of plaintiff's car.  Plaintiff's fiancee was then locked in a closet inside of the courtroom and Defendant King came running out of the courtroom, and grabbed plaintiff Ray's left arm (through the driver's side window).  Id. at ¶¶ 25-41.

     Plaintiff was in the car, frightened and screaming, while defendant Nisbet and King held plaintiff's right and left arms extended.  Defendant King then asked defendant Nisbet "if he wanted to ..." and Defendant Nisbet yelled "yeah do it!"  With this, defendant King emptied an entire canister of pepper spray onto plaintiff Ray's face.  Plaintiff fiancee could hear plaintiff's screams of pain, from inside the courtroom, and Chris Stewart could hear plaintiff screaming and crying via C.B. radio.  Defendant King said "I used the whole damn can!".  Plaintiff's hair was saturated with pepper spray. At this time, 3 to 4 police cars came upon the scene.  Defendant Bruce Haslam and an unidentified lieutenants were talking on radios and giving instructions.  Officer Nisbet pulled plaintiff's C.B. radio microphone out of the car completely, and later the entire radio was pulled out.  Defendant Officer King and other officers put plaintiff Ray into a police car, because she was placed under arrest.  Plaintiff was not read her Miranda warning.  Due to plaintiff being in imminent fear for her safety , she again had a bi-polar episode.  Id. at ¶¶

42-55.

Plaintiff immediately requested that she be taken to the hospital because the pepper spray was burning her, but this request was ignored. Once Plaintiff was taken to the Abington Police Station, Plaintiff was brought to an area between the cells where she was isolated and forcibly stripped naked and hosed down with water, while 5 to 6 male police officers watched, made lewd lascivious comments, tormented, taunted, imitated her crying, and ridiculed Plaintiff. Plaintiff's fiancee saw plaintiff Ray with her clothes off, crying, with officers all around plaintiff, ostracizing her, and tormenting her. Plaintiff was eventually given a paper dress, and put in a wet cell. After several requests and approximately six hours later plaintiff Ray was taken to defendant Abington Hospital. Id. at ¶¶ 56-68.

While at Defendant Abington Hospital, Plaintiff was given many unidentified shots/units of medication, which seemed to bring her out of her out of her bi-polar episode. Defendant Mark Shnee was brought in to do an evaluation on plaintiff Ray and told police officers (at the nurses station) "lock her up and throw away the key". Defendant Marc Shnee also revealed plaintiff's medical history to the police officers and told them that Plaintiff was not currently taking medication, and that she refuses to take medication. As a result, Plaintiff was put into four point restraints ane was subsequently involuntarily committed to the Montgomery County Emergency Services Building 50. Id. at 69-77.

II.  **STANDARD OF REVIEW**

The standard for granting a motion for summary judgment is a stringent one. Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment may be granted only when

the evidence contained in the record, including "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Serbin v. Bora Corp.,96 F.3d 66, 69 n. 2 (3d Cir. 1996). In deciding whether there are any disputed issues of material fact which must be reserved for trial, the court must view the record in the light most favorable to the non-moving party, together with all reasonable inferences which can be drawn therefrom. The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Once the moving party has carried its burden of establishing the absence of a genuine issue material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed. 2d 538 (1986). Indeed, relevant Supreme Court decisions mandate that a summary judgment motion be granted unless the party opposing the motion "provides evidence 'such that a reasonable jury could return a verdict in favor of the non-moving party.'" Lawrence v. National Westminster Bank New Jersey, 98 F.3d 61, 65 (3rd Cir. 1996) (quoting Anderson, 477 U.S. at 248, 106 S.Ct. 2505). In other words, the non-moving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Serbin, 96 F.3d at 69 n. 2 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Thus, if the non-movant's evidence on any essential element of the claims asserted is merely "colorable" or is "not significantly probative," the court must enter summary judgment in favor of the moving

party. Anderson, 477 U.S. at 249-50, 106 S.Ct. 2505; see also Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3rd Cir. 1991) (observing that non-movant's effort to defeat summary judgment may not "rest upon mere allegations, general denials, or ... vague statements").

### III.  ARGUMENT

####   A.  Plaintiff's Claims for Assault and Battery Should Not be Dismissed

Under Pennsylvania law, to prove a claim of assault, Plaintiff "must show that a particular Defendant intentionally caused an imminent apprehension of a harmful or offensive bodily contact in Plaintiff." Lakits v. York, 258 F.Supp.2d 401, 407 (E.D. Pa. 2003). Defendant erroneously states that Plaintiff did not aver any facts that would fit within the definition of assault. Plaintiff heard Dr. Schnee tell police officers "lock her up and throw away the key." (Deposition of Candace Ray at 137; a copy of Ray's deposition is attached hereto as Exhibit "B"). Based upon this statement, it is clear that a question of fact exists regarding Dr. Schnee's intent and whether Plaintiff was in apprehension of harmful or offensive bodily contact. Plaintiff's claim of assault should not be dismissed as a matter of law because a question of fact remains.

In Pennsylvania, to prove a claim for battery, "Plaintiff must establish that a particular Defendant intended to cause a harmful or offensive contact to Plaintiff, and that such contact with Plaintiff resulted." Lakits, 258 F.Supp. 2d at 407. Furthermore, in the medical context, a Plaintiff must prove a lack of informed consent on the part of the Plaintiff for the touching that occurred. Montgomery v. Bazaz-Sehgal, M.D., 568 Pa. 574, 586 (2002). Although Plaintiff may have signed a consent form, as indicated by Defendants, there are other facts which evidence that a battery may have occurred, thus precluding summary judgment on the matter. Specifically,

when Plaintiff awoke in Abington Hospital, she found herself in four-point restraints. Exhibit "B" at 98. The nurse told Plaintiff that she was in the restraints because she refused treatment from Dr. Schnee. Id. at 100. However, due to Plaintiff's bipolar episode, she has no clear recollection of what exactly happened. Plaintiff does state that in order to be in four-point restraints you have to be acting violently. Id. However, Plaintiff stated that she could not have been acting violently at the time because she has never acted violently in a hospital setting to anybody that she did not know. Id. This makes it a question of fact of whether Defendants actually needed to restrain Plaintiff, or whether Defendants committed battery. Furthermore, Plaintiff was given medication that was two times the legal limit while she was experiencing her bipolar episode. Id. at 101. Based on these facts and the fact that Plaintiff was experiencing a bipolar episode, it is questionable as to whether or not Plaintiff truly consented to the treatment. If Plaintiff did not voluntarily consent to the treatment, then defendants will be liable for battery under Pennsylvania law. Accordingly, Plaintiff's claim of battery should not be dismissed.

      **B.**     **Plaintiff's Claims for Negligence Should Not be Dismissed**

Plaintiff's claims for negligence should not be dismissed. While it is true that a medical expert is required in medical malpractice cases, as such matters encompass issues not within the ordinary knowledge of a layperson, the present claim of negligence is not one of medical malpractice. Toogood v. Rogal, D.D.S., P.C., 824 A.2d 1140, 1144 (2003). Rather, the claim of negligence is premised on defendants' breach of duty to Plaintiff when they invaded her privacy and revealed her medical records to police officers without Plaintiff's consent. When Plaintiff woke up in Abington Hospital, she saw four police officers behind the nurse station looking at her medical records on the computer and discussing them. Exhibit "B" at 104. This was a clear

violation of Plaintiff's right to privacy. As for the negligence claim, the defendants had a duty to preserve Plaintiff's privacy rights, which they violated when they allowed the officers to examine her medical records, subsequently causing Plaintiff a great deal of mental anguish. This claim of negligence does not encompass "matters not within the ordinary knowledge and experience of laypersons," thereby not requiring Plaintiff to produce an expert on the matter. Toogood, 824 A.2d at 1144. Thus, Plaintiff's claim for negligence should not be dismissed as genuine issues of fact exist regarding Defendants' negligence.

      C.    **Plaintiff's Claims for False Imprisonment Should Not Be Dismissed**

Plaintiff has set forth sufficient facts to support a claim for false imprisonment against Defendants. In Pennsylvania, the elements of false imprisonment are (1) the detention of another person and (2) the unlawfulness of such detention. Pahle v. Colebrookdale Tp., 227 F.Supp.2d 361, 374 (E.D. Pa. 2002)(citing Fagan v. Pittsburgh Terminal Coal Corporation, 299 Pa. 109, 149 A. 159 (1930)). Defendants are correct in their assertion that Plaintiff was brought to the Abington Hospital by the Abington Police Officers. However, at the hospital, the doctors placed Plaintiff in four-point restraints. Exhibit "B" at 98. Her arms and legs were tied to the bed, fully extended and apart. Id. at 99. Plaintiff has no recollection of acting violently towards the doctors or nurses. Id. at 100. Therefore, there is a question of fact regarding whether Plaintiff was lawfully placed in the restraints at the hospital and whether these restraints were medically necessary. As such, Plaintiff's claims of false imprisonment against Defendants should not be dismissed.

      D.    **Plaintiff's Claims for Violations of the Pennsylvania Mental Health Procedures Act Should Not Be Dismissed**

Plaintiff's Claims for violations of the Pennsylvania Mental Health Procedures Act

(MHPA) should not be dismissed as there is a genuine issue of fact regarding whether or not Defendants' conduct constituted "gross negligence" or "willful misconduct."

Under the MHPA, physicians and hospitals are immune from civil liability "in the absence of willful misconduct or gross negligence." Downey v. Crozer-Chester Medical Center, 817 A.2d 517, 524 (2003) (quoting 50 P.S. § 7114(a)). Plaintiff testified in her deposition that she was placed in four-point restraints at the hospital because she refused treatment. Exhibit "B" at 100. Furthermore, Plaintiff was given two and a half times the limit of her medication. Id. at 101. The police officers were also looking at Plaintiff's medical records and discussed them with the doctors. Id. at 104. Plaintiff also overheard Defendant Schnee tell the police that she refused to take her medications, as well as that Plaintiff should be locked up and the throw away the key. Id. at 137. These instances are evidence of gross negligence and willful misconduct on the part of Defendants. As such, Defendants are not entitled to immunity under the MHPA and the claims for violations of this act should not be dismissed.

### E. Plaintiff's Claims for Invasion of Privacy Should Be Dismissed

Plaintiff concedes that the statute of limitations for a claim of invasion of privacy under Pennsylvania law is one year. 42 Pa.C.S.A. § 5523. Therefore, Count XI of Plaintiff's Complaint alleging invasion of privacy should be dismissed.

### IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment should be denied.

FROST AND ZEFF

|  |  |
|---|---|
| Date: | GREGG L. ZEFF<br>Attorney for Plaintiff |

IN THE UNITED STATES DISTRICT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CANDACE RAY** | : | CIVIL ACTION NO. 02-CV-4382 |
| | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| **ABINGTON TOWNSHIP,** | : | |
| **CHIEF OF POLICE WILLIAM KELLY** | : | |
| **POLICE OFFICER NISBET, S.** | : | |
| **BADGE NO. 2933,** | : | |
| **POLICE OFFICER J. KING** | : | |
| **BADGE NO. 2530,** | : | |
| **POLICE OFFICER BRUCE HASLAM** | : | |
| **POLICE OFFICER MATZ,** | : | |
| **POLICE OFFICER RAWTZ,** | : | |
| **POLICE OFFICER SCHOLL,** | : | |
| **POLICE OFFICER MANN,** | : | |

| | |
|---|---|
| **ABINGTON MEMORIAL HOSPITAL,** and **MARK SHNEA,** | : : : |

**CERTIFICATION OF SERVICE**

    I, **GREGG L. ZEFF, ESQUIRE**, hereby certify that on November 20, 2003, true and correct copies of Plaintiff's Responses to Defendants' Summary Judgment Motions were forwarded to counsel via Hand-Delivery to the below listed counsel:

| | |
|---|---|
| Joseph J. Santarone, Jr., Esquire<br>**MARSHALL, DENNEHY, WARNER,<br> COLEMAN & GOGGIN**<br>One Montgomery Plaza, Suite 1002<br>Norristown, PA  19401-4814 | David R. Zaslow, Esquire<br>**WHITE & WILLIAMS**<br>1500 Lancaster Avenue<br>Paoli, PA  19301-1500 |

_____
GREGG L. ZEFF, ESQUIRE