IN THE UNITED STATES DISTRICT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| CANDACE RAY : | CIVIL ACTION NO. 02-CV-4382 |
| v. : | JURY TRIAL DEMANDED |
| ABINGTON TOWNSHIP, : | |
| CHIEF OF POLICE WILLIAM KELLY : | |
| POLICE OFFICER NISBET, S. : | |
|  BADGE NO.  2933, : | |
| POLICE OFFICER J. KING : | |
|  BADGE NO.  2530, : | |
| POLICE OFFICER BRUCE HASLAM : | |
| POLICE OFFICER MATZ, : | |
| POLICE OFFICER RAWLS, : | |
| POLICE OFFICER SCHOLL, : | |
| POLICE OFFICER MANN, : | |
| ABINGTON MEMORIAL HOSPITAL, : | |
| and MARK SHNEE. : | |

**ORDER**

**AND NOW**, this          day of               2003, it is hereby **ORDERED** that Defendants', Abington Township, Chief of Police William Kelly, Officer Shawn Nisbet, Officer Jeanette King, Officer Bruce Haslam, Officer John Matz, Officer Thomas Rawls, Officer Scott Scholl, and Officer Robert Mann, Motion for Summary Judgment is **DENIED.**

                                                                                                                                         
                                                                                                                          J.

1

IN THE UNITED STATES DISTRICT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| CANDACE RAY : | CIVIL ACTION NO. 02-CV-4382 |
| : | |
| v. : | JURY TRIAL DEMANDED |
| : | |
| ABINGTON TOWNSHIP, : | |
| CHIEF OF POLICE WILLIAM KELLY : | |
| POLICE OFFICER NISBET, S. : | |
| BADGE NO. 2933, : | |
| POLICE OFFICER J. KING : | |
| BADGE NO. 2530, : | |
| POLICE OFFICER BRUCE HASLAM : | |
| POLICE OFFICER MATZ, : | |
| POLICE OFFICER RAWTZ, : | |
| POLICE OFFICER SCHOLL, : | |
| POLICE OFFICER MANN, : | |
| ABINGTON MEMORIAL HOSPITAL, : | |
| and MARK SHNEE, : | |
| : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF CANDACE RAY'S RESPONSE TO DEFENDANTS', ABINGTON TOWNSHIP, CHIEF OF POLICE WILLIAM KELLY, OFFICER SHAWN NISBET, OFFICER JEANETTE KING, POLICE OFFICER BRUCE HASLAM, OFFICER JOHN MATZ, OFFICER THOMAS RAWTZ, OFFICER SCOTT SCHOLL AND OFFICER ROBERT MANN, MOTION FOR SUMMARY JUDGMENT**

**I.   BACKGROUND**

On July 2, 2000, the Abington police were called to the home of plaintiff, Candace Ray, due to a domestic dispute with her fiancé, Jon Grob. (Plaintiff's Amended Complaint ¶ 18, a copy of Plaintiff's Amended Complaint is attached hereto as Exhibit "A"). Plaintiff Ray did not wish to press any charges against her fiancee, and requested that the police allow Mr. Grob to voluntarily leave the premises. However, the Abington Police arrested Mr. Grob without

2

consideration of plaintiff's Ray's request. Plaintiff was distraught over her fiancee's arrest and contacted Chris Stewart to help bail Mr. Grob from jail. Id. at ¶¶ 18-24.

Plaintiff went to her fiancee's arraignment to bail him out, and was told to leave even though it was a public hearing. Plaintiff then drove off of the premises, but inadvertently drove the wrong way and turned the car around. Plaintiff made a right onto Mt. Vernon and she stopped in front of the District Magistrates Building, (Court 38-1-05) on Easton Road, still in her car. It was plaintiff's intent to find out what her fiancee's bail was so that she could pay it. Plaintiff was talking on a C.B. radio to Mr. Chris Stewart when defendant Nisbet approached Plaintiff's car on the passenger's side. Plaintiff's car rolled forward and Defendant Nisbet was accidentally knocked down because his head and upper body were inside of plaintiff's car window. Defendant Nisbet did not receive any medical treatment for this incident and instead grabbed the keys out of the ignition of plaintiff's car. Plaintiff's fiancee was then locked in a closet inside of the courtroom and Defendant King came running out of the courtroom, and grabbed plaintiff Ray's left arm (through the driver's side window). Id. at ¶¶ 25-41.

Plaintiff was in the car, frightened and screaming, while defendant Nisbet and King held plaintiff's right and left arms extended. Defendant King then asked defendant Nisbet "if he wanted to ..." and Defendant Nisbet yelled "yeah do it!" With this, defendant King emptied an entire canister of pepper spray onto plaintiff Ray's face. Plaintiff fiancee could hear plaintiff's screams of pain, from inside the courtroom, and Chris Stewart could hear plaintiff screaming and crying via C.B. radio. Defendant King said "I used the whole damn can!". Plaintiff's hair was saturated with pepper spray. At this time, 3 to 4 police cars came upon the scene. Defendant Bruce Haslam and an unidentified lieutenants were talking on radios and giving instructions.

3

Officer Nisbet pulled plaintiff's C.B. radio microphone out of the car completely, and later the entire radio was pulled out. Defendant Officer King and other officers put plaintiff Ray into a police car, because she was placed under arrest. Plaintiff was not read her Miranda warning. Due to plaintiff being in imminent fear for her safety, she again had a bi-polar episode. Id. at ¶¶ 42-55.

Plaintiff immediately requested that she be taken to the hospital because the pepper spray was burning her, but this request was ignored. Once Plaintiff was taken to the Abington Police Station, Plaintiff was brought to an area between the cells where she was isolated and forcibly stripped naked and hosed down with water, while 5 to 6 male police officers watched, made lewd lascivious comments, tormented, taunted, imitated her crying, and ridiculed Plaintiff. Plaintiff's fiancee saw plaintiff Ray with her clothes off, crying, with officers all around plaintiff, ostracizing her, and tormenting her. Plaintiff was eventually given a paper dress, and put in a wet cell. After several requests and approximately six hours later plaintiff Ray was taken to defendant Abington Hospital. Id. at ¶¶ 56-68.

While at Defendant Abington Hospital, Plaintiff was given many unidentified shots/units of medication, which seemed to bring her out of her out of her bi-polar episode. Defendant Mark Shnee was brought in to do an evaluation on plaintiff Ray and told police officers (at the nurses station) "lock her up and throw away the key". Defendant Marc Shnee also revealed plaintiff's medical history to the police officers and told them that Plaintiff was not currently taking medication, and that she refuses to take medication. As a result, Plaintiff was put into four point restraints ane was subsequently involuntarily committed to the Montgomery County Emergency Services Building 50. Id. at 69-77.

## II.    STANDARD OF REVIEW

The standard for granting a motion for summary judgment is a stringent one.  Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment may be granted only when the evidence contained in the record, including "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Serbin v. Bora Corp., 96 F.3d 66, 69 n. 2 (3d Cir. 1996).  In deciding whether there are any disputed issues of material fact which must be reserved for trial, the court must view the record in the light most favorable to the non-moving party, together with all reasonable inferences which can be drawn therefrom.  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Once the moving party has carried its burden of establishing the absence of a genuine issue material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed. 2d 538 (1986).  Indeed, relevant Supreme Court decisions mandate that a summary judgment motion be granted unless the party opposing the motion "provides evidence 'such that a reasonable jury could return a verdict in favor of the non-moving party.'"  Lawrence v. National Westminster Bank New Jersey, 98 F.3d 61, 65 (3rd Cir. 1996) (quoting

Anderson, 477 U.S. at 248, 106 S.Ct. 2505). In other words, the non-moving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Serbin, 96 F.3d at 69 n. 2 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Thus, if the non-movant's evidence on any essential element of the claims asserted is merely "colorable" or is "not significantly probative," the court must enter summary judgment in favor of the moving party. Anderson, 477 U.S. at 249-50, 106 S.Ct. 2505; see also Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3rd Cir. 1991) (observing that non-movant's effort to defeat summary judgment may not "rest upon mere allegations, general denials, or ... vague statements").

### III. ARGUMENT

#### A. Count I of Plaintiff's Amended Complaint Should Not Be Dismissed with Prejudice

Count I of Plaintiff's Amended Complaint asserting a claim pursuant to 42 U.S.C. § 1983 for violation of Plaintiff's Civil Rights should not be dismissed, as Plaintiff has set forth sufficient facts supporting this claim.

A claim of excessive force is analyzed under an objective reasonableness test. Sharrar v. Felsing, 128 F.3d 810 (3d Cir. 1997). The reasonableness of particular force used is analyzed from the officer's perspective and there must be careful attention to the facts of a particular case. Graham v. M.S. Connor, 490 U.S. 386, 396 (1989). Furthermore, there must be some evidentiary basis on which to hold the defendant officers liable. Sharrar, 128 F.3d at 821. Contrary to defendants' position, Plaintiff has set forth a satisfactory evidentiary basis on which to hold the

6

officers at issue liable.

Jon Grob testified in his deposition that while he was at his arraignment, Officers King and Nisbet approached Plaintiff, who was sitting in her car outside of the courthouse. (Deposition of Jon Grob at 73-76; a copy of Jon Grob's deposition is attached hereto as Exhibit "B"). Jon Grob saw Officers King and Nisbet holding Candace Ray's arms outside of the car and he saw Officer King spraying pepper spray in Ray's face. Id. at 76. Grob saw Ray kicking and screaming as the officers continued to spray Ray with pepper spray. Id. During the course of this episode, Grob stated that Lieutenant Bruce Haslam came into the court room and allowed Officers King and Nisbet to continue their assault of Ray. Id. at 81-82. Later, Grob saw Ray in the hallway of the jail, crying, stripped naked from the waist up, and soaking wet. Id. at 92-93. Grob heard the officers calling her names, such as "bitch," all the while Ray was crying. Id. at 94. Additionally, at one point, Ray climbed up in her cell so that Grob could see her and he saw where her body had been burnt by the pepper spray. Id. at 97. Candace Ray began experiencing a bipolar episode during this incident and remembers Officer Nisbet telling her she was being arrested. (Deposition of Candace Ray at 91; a copy of Candace Ray's deposition is attached hereto as Exhibit "C"). The next thing she remembers is waking up in Abington Hospital in four-point restraints. Id. at 98. Despite Ray's lack of memory, Grob's recount of what he saw happen is more than enough to support a claim against the officers in question for use of excessive force. Even from the perspective of an officer, who must often use "some degree of physical coercion or threat thereof to effect [an arrest]," the use of pepper spray and strong grip on Ray's arms cannot be considered "reasonable." Graham, 490 U.S. at 396.

Furthermore, stripping Plaintiff of her clothing in full view of male officers and prisoners

while hosing her down and taunting her cannot possibly fall within a police officer's constitutional shield. Based on these facts, Plaintiff's Count I should not be dismissed with prejudice.

### B. Count II of Plaintiff's Amended Complaint Should Not Be Dismissed With Prejudice

Count II of Plaintiff's Amended Complaint asserting a claim against Abington Township pursuant to 42 U.S.C. § 1983 should not be dismissed, as Plaintiff has set forth sufficient facts alleging the existence of an unconstitutional policy in Abington Township.

A municipality may be sued directly under § 1983 "if it is alleged to have caused a constitutional tort through 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" City of St. Louis v. Praprotnik, 485 U.S. 112, 121 (quoting Monell v. New York City Dept. of Social Services, 436 U.S. 658, 90, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978)). "A plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage with the force of law.'" City of St. Louis, 485 U.S. at 127 (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-168, 90 S. Ct. 1598, 161301614, 26 L.Ed.2d 142 (1970)). Therefore, the fact that Abington Township Police does not posses a formal policy authorizing the violation of constitutional rights by its police officers, will not preclude municipality liability, as Defendants argue. Rather, the unconstitutional policy and custom may be established by "showing that a given course of conduct, although not specifically endorsed [by law], is so well-settled and permanent as virtually

8

to constitute law." Bielevicz v. Dubinon, 915 F.2d 845, 850 (citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990)).

The facts alleged by Plaintiff and Grob makes it a question of fact as to whether or not there is an unconstitutional policy or custom widespread in Abington Township. As discussed *supra*, Plaintiff's constitutional rights were violated when the Police Officers in question utilized excessive force when they arrested her. Additionally, the treatment of Grob is further evidence of a widespread unconstitutional policy in Abington Township. As Ray was being sprayed excessively with pepper spray, Grob watched from the window of the courtroom and heard Ray screaming. Exhibit "B" at 76. The officers subsequently placed Grob in a small room, the size of a closet, with no windows. Id. at 81. Grob could still hear Ray screaming from inside the room. Id. This instance indicates that a question of fact exists for a jury to determine whether or not such conduct by the police is so widespread as to constitute policy or custom. Although such policy or custom is not written in a handbook for police officers, such a policy may still be the basis for municipality liability. Therefore, summary judgment on this matter is inappropriate.

In addition to existence of an unlawful policy or custom, a Plaintiff must "demonstrate a 'plausible nexus' or affirmative link' between the municipality's custom and the specific deprivation of constitutional rights at issue." Id. As long as the causal connection is not too tenuous, the question of causation is for the jury. Id. To establish liability on the part of a municipality, such as Abington Township, a Plaintiff must simply establish whether policymakers were aware of the unlawful conduct, but failed to take the appropriate measures to stop the conduct. Bielevicz, 915 F.2d at 851-52. In this instance, a question of fact exists as to whether or not the policymakers of Abington Township knew about the alleged violations. Therefore, Count

II of Plaintiff's Complaint should not be dismissed.

Plaintiff's other basis for asserting § 1983 liability on Abington Township is premised on the failure to train the police. This may serve as the basis for § 1983 liability "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.' City of Canton v. Harris, 489 U.S. 378, 388 (1989). This failure to train may be considered a "policy" for § 1983 liability purposes. Id. at 390. "Deliberate indifference" can be shown when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." Id. Defendants claim that no constitutional violations occurred. However, as demonstrated above, the officers in question used excessive force when they arrested Candace Ray on July 2, 2000. This is clearly a constitutional violation. Accordingly, Plaintiffs have set forth material facts to warrant denying defendants' motion for summary judgment.

   **C.**  **<u>Moving Defendants Are Not Entitled to Qualified Immunity</u>**

The moving Defendants are not entitled to qualified immunity. When qualified immunity is raised on a motion for summary judgment as a defense to a claim under § 1983, the Court "must begin with this threshold question: do the facts alleged, viewed in the light most favorable to the party asserting the injury, show that the officers conduct violated a constitutional right?" Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002) (citing Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). If the facts alleged by a Plaintiff are sufficient to demonstrate a constitutional violation, "the Court must consider 'whether it would be clear to a reasonable

officer that his conduct was unlawful in the situation he confronted.'" Id. at 277. "The Court may not properly grant summary judgment on the basis of qualified immunity if the record compels the opposite conclusion or if there exists disputed issues of material fact relevant to the Court's evaluation of the 'objective reasonableness' of the Defendants conduct." Mantz v. Chain, 239 F.Supp. 2d 486, 496 (D.N.J. 2002).

This case involves the straight forward issue of whether or not the Defendant officers exceeded their authority and used excessive force during the arrest of Candace Ray. There can be no doubt that when the officers grabbed Plaintiff's arms and sprayed her with pepper spray and when they stripped her naked and hosed her down, that they were not performing an activity authorized by the constitution and a question of fact remains.

In Tarlecki v. Mercy Fitzgerald Hospital, 2002 WL 156 5568 (E.D. Pa.), the Court denied Defendants' summary judgment motion where it was alleged that an officer ordered an arrestee in handcuffs to the ground, dragged him on the floor and taunted him. Similarly in this case, when Plaintiff was taken out of the police car and sprayed with pepper spray, the officers were not and cannot be considered to have been engaged in a constitutionally protected activity. As stated above, the standard for evaluating a claim of excessive force is one of objective reasonableness. Sharrar, 128 F. 3d at 820.

> Determining whether forced used to effect an arrest is reasonable under the Fourth Amendment requires the Court to balance the nature and quality of the intrusion on the arrestee's Fourth Amendment interest against countervailing government interest. Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 1871, 104 L.Ed. 2d 443 (1989). Since reasonableness is not capable of precise definition or a mechanical application, the Court's inquiry is conducted in light of all the circumstances of a given case, including the severity of the climate issue,

> whether the suspect poses an immediate threat to the safety of
> the officers or others, whether he is actively resisting arrest or
> attempting to evade arrest by flight. Id. at 1871-72.

Here, all factors must lead to the conclusion that there is a question of fact which precludes entry of summary judgment in Defendants' favor on the issue of qualified immunity. Plaintiff was not resisting arrest. Plaintiff was not an immediate threat to the safety of the officers or others. She did not do or say anything to provoke the name-calling that took place. When Plaintiff went to Grob's arraignment and was subsequently asked to leave, she was not disruptive or loud. Exhibit "B" at 70. There are no facts to support the contention that the police acted reasonably in their treatment towards Plaintiff. Therefore, Defendants are not entitled to qualified immunity and Defendants' Motion for Summary Judgment should be denied.

### D. Count IV of Plaintiff's Amended Complaint Should Not Be Dismissed With Prejudice

Count IV of Plaintiff's Complaint alleging violations of Plaintiff's substantive due process rights as a result of her arrest and detention by the Abington Township defendants should not be dismissed. Defendants are correct in their assertion that under an excessive force claim, the facts are analyzed under the Fourth Amendment reasonableness standard, rather than under a substantive due process standard. However, Plaintiff also have a claim under the Fourteenth Amendment substantive due process standards which should not be dismissed.

To prove a violation of substantive due process, "the plaintiff must show that the state acted in a manner that 'shocks the conscience.'" Schieber v. City of Philadelphia, 320 F.3d 409, 417 (3d Cir. 2003) (quoting City of Sacramento v. Lewis, 523 U.S. 833 (1998)). Whether or not

conduct "shocks the conscience" depends on the particular facts at issue. Id. More than negligence is necessary to "shock the conscience." Id. at 419. In the case at issue, Defendants' treatment towards Plaintiff, other than the excessive force used during her arrest, creates a sufficient question of fact regarding Plaintiff's substantive due process claim. After Plaintiff's arrest and after she was placed in jail, the officers stripped her down, hosed her off and called her degrading names. Exhibit "B" at 92-97. This conduct may be qualified as conduct which "shocks the conscience." Therefore, Count IV of Plaintiff's Amended Complaint should not be dismissed.

### E. Count VI of Plaintiff's Amended Complaint Should Not Be Dismissed With Prejudice

Count VI of Plaintiff's Amended Complaint alleging violations of Plaintiff's constitutional right to privacy should not be dismissed, as questions of fact exist precluding summary judgment. Defendants erroneously state that Plaintiff brought this claim under the First, Fourth, Fifth, Ninth, and Fourteenth Amendments. As stated in Plaintiff's Amended Complaint, the violations of the right to privacy are brought pursuant to the First, Fourth, and Fourteenth Amendments. (See ¶ 118 of Plaintiff's Amended Complaint; a copy of Plaintiff's Amended Complaint is attached hereto as Exhibit "C").

#### 1. The First Amendment

Plaintiff was arrested as a result of her lawfully parking a vehicle next to a curb adjacent to the municipal courthouse. This arrest was in violation of Plaintiff's First Amendment Right to assembly. The First Amendment states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of

speech, or of the press; *or the right of the people peaceably to assemble*, and to petition the Government for a redress of grievances." U.S. Const. Amend. 1.

### 2. The Fourth Amendment

Plaintiff has set forth sufficient facts to support a claim of a violation of her right to privacy under the Fourth Amendment. Defendants are correct in their statement prisoners have no legitimate expectation of privacy in their prison cells. Warcloud v. Horn, 1998 WL 126917 (E.D. Pa)(citing Jones/Seymour v. LeFebvre, 781 F.Supp. 355, 357 (E.D. Pa. 1991)). However, inmates "do retain certain rights of privacy under the Fourth Amendment, which include the right not to be viewed naked by a member of the opposite sex." Johnson v. Pa. Bureau of Corrections, 661 F.Supp. 425, 430 (W.D. Pa. 1987). Contrary to Defendants' position, Plaintiff has set forth evidence supporting the allegations of the violations of her right to privacy under the Fourth Amendment. Specifically, Ray states that she was naked in her cell and five police officers were around. Exhibit "C" at 130. Other prisoners could also see Ray, as one of the prisoners told Grob that he saw what the police did to Ray. Id. These facts are sufficient to withstand a motion for summary judgment, as there is a question of fact regarding whether or not the police violated Plaintiff's right to privacy under the Fourth Amendment.

### 3. Fourteenth Amendment

Plaintiff has established facts to support her claim of violation of privacy under the Fourteenth Amendment. "The right to privacy guaranteed by the Fourteenth Amendment protects some confidential information, including medical reports." Mraz v. County of Lehigh, 862 F. Supp. 1344, 1349 (E.D. Pa. 1994). This right to privacy regarding medical records applies

14

to prisoners, as "prison inmates do not shed all fundamental protections of the Constitution at the prison gates." Doe v. Delie, 257 F.3d 309, 315 (3d Cir. 2001)(citing Wolff v. McDonnell, 418 U.S. 539, 555 (1974)).  In the case sub judice, there is a question of fact as to whether or not Plaintiff's right to privacy under the Fourteenth Amendment was violated.  Plaintiff testified in her deposition that when she woke up in Abington Hospital, she saw four or five police officers talking to Shnee and looking at the computer at her medical records.  Exhibit "C" at 98.  Plaintiff also heard Shnee tell the officers that she refused to take her medication.  Id.  Because there is a right to privacy in one's medical records, including the medical records of an inmate, these facts are sufficient to withstand a motion for summary judgment.   Therefore, Plaintiff's claim for violation of privacy under the Fourteenth Amendment should not be dismissed.

  **F.** **Count VII of Plaintiff's Amended Complaint Should Not Be Dismissed With Prejudice**

Count VII of Plaintiff's Amended Complaint alleges violations against Defendants for failure to adequately train police.  In response, Plaintiff incorporates by reference the argument with regard to Count II of Plaintiff's Amended Complaint and request that the Court deny Defendants' Motion for Summary Judgment, as questions of material fact exist.

  **G.** **Count IX and X of Plaintiff's Complaint Should Not be Dismissed With Prejudice**

Plaintiff's claims of false imprisonment and violations of the Pennsylvania Mental Health Act should not be dismissed.  Defendants are correct in their assertion that municipalities have governmental immunity and are not liable for injuries caused by them or their employees, if the

acts constitute "a crime, actual fraud, malice, or willful misconduct." Debellis v. Kulp, 166 F. Supp.2d 255, 278 (quoting 42 Pa.Cons. Stat. § 8542(a)). Employees of the agencies enjoy the same immunity as their employers under the Pennsylvania Tort Claims Act. Id. However, "if the court determines that the employee's act constituted 'a crime, actual fraud, actual malice or willful misconduct,' the employee's ability to claim both the Act's overall restriction on liability and the defense of official immunity is eliminated." Id. at 278-79. Therefore, an officer may be liable for false imprisonment where there was no probable cause to arrest the individual. Id. at 279. In the case at hand, Plaintiff was arrested for no apparent reason. Plaintiff was simply seated in her car outside of the courthouse. Exhibit "C" at 90. While Plaintiff was present at Grob's arraignment for a brief period of time, she did not make a scene, yet was asked to leave regardless by the magistrate judge. Id. at 86. Subsequently, when the officers grabbed Plaintiff's arms and began spraying her with pepper spray, she started screaming, but did not resist arrest. Exhibit "C" at 84. These facts, taken in light most favorable to plaintiff, establish a genuine issue as to whether or not Plaintiff was arrested with probable cause. Therefore, based on this unlawful conduct, the individual officers named as defendants in this case are not entitled to immunity under the Pennsylvania Tort Claims Act, thereby precluding summary judgment on the false imprisonment claim.

    Additionally, as established *supra*, federal claims against the Defendants remain. Therefore, this Court retains supplemental jurisdiction over the state law claims stated in Counts IX and X of Plaintiff's Complaint pursuant to 28 U.S.C. § 1367.

## IV.  **CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment should be denied.

                                          FROST AND ZEFF

                                          GREGG L. ZEFF

Date:                                   Attorney for Plaintiff

IN THE UNITED STATES DISTRICT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CANDACE RAY** | : | CIVIL ACTION NO. 02-CV-4382 |
| | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| **ABINGTON TOWNSHIP,** | : | |
| **CHIEF OF POLICE WILLIAM KELLY** | : | |
| **POLICE OFFICER NISBET, S.** | : | |
| **BADGE NO. 2933,** | : | |
| **POLICE OFFICER J. KING** | : | |
| **BADGE NO. 2530,** | : | |
| **POLICE OFFICER BRUCE HASLAM** | : | |
| **POLICE OFFICER MATZ,** | : | |
| **POLICE OFFICER RAWTZ,** | : | |
| **POLICE OFFICER SCHOLL,** | : | |
| **POLICE OFFICER MANN,** | : | |
| **ABINGTON MEMORIAL HOSPITAL,** | : | |
| **and MARK SHNEE.** | : | |
| | : | |

### CERTIFICATION OF SERVICE

I, **GREGG L. ZEFF, ESQUIRE**, hereby certify that on November 20, 2003, true and correct copies of Plaintiff's Responses to Defendants' Summary Judgment Motions were forwarded to counsel via Hand-Delivery to the below listed counsel:

Joseph J. Santarone, Jr., Esquire
**MARSHALL, DENNEHY, WARNER,**
 **COLEMAN & GOGGIN**
One Montgomery Plaza, Suite 1002
Norristown, PA  19401-4814

David R. Zaslow, Esquire
**WHITE & WILLIAMS**
1500 Lancaster Avenue
Paoli, PA  19301-1500

_____
GREGG L. ZEFF, ESQUIRE