IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CANDACE RAY | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 02-4382 |
| | : | |
| v. | : | |
| | : | |
| ABINGTON TOWNSHIP, CHIEF OF POLICE WILLIAM KELLY, POLICE OFFICER NISBET, POLICE OFFICER J. KING, POLICE OFFICER BRUCE HASLAM, OFFICER MATZ, OFFICER RAWTZ, OFFICER SCHOLL, OFFICER MANN AND ABINGTON MEMORIAL HOSPITAL AND MARK SCHNEE | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

BUCKWALTER, S.J.                                                                                                July 6, 2004

      Presently before the Court are Defendants Abington Township, et al's Motion for Reconsideration of the Court's decision on Counts II, V, and VII of Plaintiff's Amended Complaint. Plaintiff did not file a response to this motion. For the reasons set forth below, Defendants' motion is granted.

**I. Background**

      According to Plaintiff, the following events led to Plaintiff's present complaint. In July 2000, Plaintiff Candace Ray called the police to her house to intervene in a domestic dispute. As a result of this call, the Abington police arrested Jon Grob, Plaintiff's fiancé.

Shortly thereafter, Plaintiff went to Mr. Grob's arraignment hearing and attempted to stop the hearing by explaining that she was responsible for the alleged altercation, not Mr. Grob. Without any direction from the magistrate, Defendant Officer King escorted her out. Plaintiff continued to argue with Defendant Officer King as she was escorted out of the building, and soon thereafter, Defendant Officer Nisbet arrived on the scene. Defendant Officer Nisbet eventually convinced Plaintiff to leave in her car. He told her that if she returned, she would be arrested.

After several minutes, Plaintiff did return to the courthouse area, but this time, she parked on a public street that ran along one side of the courthouse. According to Defendant Officer Nisbet, Plaintiff parked in a lawful parking spot facing east on the public street. Plaintiff remained in her car, but appeared to be peering from the driver's side seat of her car into the northside courtroom windows. Plaintiff did not make any noise or cause any other disturbance, however, when she pulled up, people in the courtroom stopped what they were doing, and everyone looked out the window. At that point, and again, without direction from the magistrate, Defendant Officer Nisbet left the courtroom and went out to confront Plaintiff. When he reached the car, Defendant Officer Nisbet leaned inside the passenger side window, asked Plaintiff why she had returned, and then asked Plaintiff for her identification. As Plaintiff searched for her identification, she asked Defendant Officer Nisbet why it was needed and he informed her that he was placing her under arrest. When Plaintiff learned she was to be arrested, her car rolled forward, hitting Defendant Officer Nisbet. Defendant Officer Nisbet then dove inside the car, and attempted to stop Plaintiff from fleeing. Defendant Officer King soon joined Defendant Officer Nisbet in subduing Plaintiff. During the course of the struggle, Defendant Officer King sprayed Plaintiff with pepper spray. Defendant Officer Bruce Haslam allegedly instructed other officers responding to the scene via police radio. Throughout the time that the Defendant Police

Officers were subduing her, Plaintiff was screaming and crying. This event caused Plaintiff to suffer a bipolar episode.

Defendant Officer King and other officers placed Plaintiff under arrest and transported her in a police car to the Abington Police Station. Plaintiff requested she be taken to the hospital for treatment for the pepper spray still burning her skin. Instead, Plaintiff was placed in an open area, forced to strip in front of several male officers and various prisoners in nearby cells, and sprayed with a hose.[1] During this time, Plaintiff cried and screamed, while the unidentified officers jeered and taunted her.[2] Afterward, Plaintiff was given a paper dress, and put in a cell. Six hours later, Plaintiff was taken to Abington Hospital.

## II. Standard of Review

A motion for reconsideration should be granted when it is "consonant with justice to do so." American Guaranty and Liability Ins. Co. v. Fojanini, 99 F. Supp. 2d 558. 560-61 (E.D. Pa. 2000). If a court determines there were errors of law or if the movants present newly discovered evidence, it may vacate its earlier order and issue a new order consonant with a just decision. Id.

## III. Discussion

---

[1] Defendants dispute this account stating that although police officers hosed Plaintiff down, she was fully clothed at the time. Defendants also deny that male police officers taunted and jeered at Plaintiff while hosing her down.

[2] Plaintiff herself does not have an independent recollection of this event, however, Plaintiff's fiancé was brought through the area where Plaintiff was being hosed down and observed the incident. In his deposition, he states that he saw Plaintiff naked from the waist up, being sprayed with water. She was being told to remove the rest of her clothing and was taunted and insulted by 4 or 5 unidentified male police officers.

**a. Count II - Civil Rights Violation (Excessive Force)**

The Defendants first ask for reconsideration of Count II of Plaintiff's Amended Complaint. The second count of Plaintiff's Amended Complaint is against the Township of Abington for civil rights violations for repeatedly and knowingly failing to enforce the laws of the United States and allowing instead for police officers to employ excessive and illegal force. Under the United States Supreme Court holding in Monell v. Department of Social Services, 436 U.S. 658 (1978), a municipality may be held responsible for civil rights violations if the plaintiff can prove that there was a longstanding custom or policy in place that had taken on the force of law, and that a municipality employee, acting in accordance with that policy, violated the civil rights of the Plaintiff. Monell, 436 U.S. at 691-95. A municipality cannot be held liable for merely employing persons who commit tortious acts. There must instead be a causal link between the tortious act and the municipality's custom or policy. Beck v. City of Pittsburgh, 89 F.3d 966, 972 (3d Cir. 1996).

Defendants in their motion for reconsideration assert, and upon further reflection the Court agrees, that Plaintiff did not provide sufficient evidence of a custom or policy that violated the civil rights of the Plaintiff. Plaintiff's evidence on this matter is limited to her personal account, and the account of Mr. Grob of one series of incidents. Although Defendant Officer Nisbet corroborates much of this account in his deposition, he does not admit that the practices Plaintiff alleged to have occurred[3] were the implementation of a police department

---

[3] Specifically, Plaintiff alleges she was excessively sprayed with pepper spray, and subsequently hosed down, while naked and in full view of several male police officers and inmates. Plaintiff also alleges that during the time she was being hosed down, the officers were jeering and taunting her. Defendant Officer Nisbet corroborates Plaintiff's story to the point where he agrees she was hosed down in front of several male officers, but denies that she was

policy or custom.  Plaintiff provides proof of no other similar incidents, nor does she provide deposition testimony by any member of the Abington Police Department or the Township that would support her claim.  For these reasons, Defendant's Motion as to Count II is granted.

**b. Count V - Violation of Civil Rights**

Count V of Plaintiff's Amended Complaint alleges that Defendants violated her rights against unreasonable searches and seizures.  Defendants did not address this count in their Motion for Summary Judgment, however, they now ask for reconsideration based upon their claim of qualified immunity.

Qualified immunity serves to "insulate governmental officials from liability for assumable damages when the discretionary conduct of that official does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982).  Defendants argue that Defendant Officer Nisbet had probable cause to arrest Plaintiff when she returned to park outside the courtroom after being told to leave the area by Defendant Officer Nisbet and after being told she was being arrested, she allowed her car to move while Defendant Officer Nisbet was partially inside.  Certainly there was probable cause to arrest Plaintiff once she apparently made an attempt to flee.  However, central question is whether, at the time Defendant Officer Nisbet announced he was arresting Plaintiff, if a reasonable person would believe he or she had probable cause to do so.

First, the Court must consider with what Defendant Officer Nisbet intended to charge Plaintiff when he decided to arrest her.  During his deposition, Defendant Officer Nisbet

---

unclothed at the time or that the officers jeered and taunted her.

stated that he planned to charge Plaintiff with disorderly conduct for "stopping the courtroom, being asked to leave and returning." (Defs. Abington Memorial Hospital and Mark Schnee's Mot. for Summ. J. Ex. A at 19.)  A person may be charged with disorderly conduct under Pennsylvania law if:

> with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, [s]he:
>
> (1) engages in fighting or threatening, or in violent or tumultuous behavior;
> (2) makes unreasonable noise;
> (3) uses obscene language, or makes an obscene gesture; or
> (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

18 Pa. Con. Stat. § 5503 (a) (2004).

In this case, Plaintiff's conduct within the courtroom may reasonably have been considered disorderly, in that she entered the courtroom, and spoke in a loud voice in an attempt to stop the proceedings.  The Court finds that a reasonable person could have believed there was probable cause to arrest Plaintiff for Disorderly Conduct for her prior misbehavior when she returned to the area, based upon her behavior within the courtroom.   Therefore, solely as to Count V of Plaintiff's Amended Complaint, Defendants are entitled to qualified immunity and summary judgment is granted on this Count.

    **c. Count VII - Failure to Train**

Defendants next argue that summary judgment on Plaintiff's failure to train claim should be granted, because Plaintiff failed to provide any evidence from supervisory members of the Abington Police Department or the Township that a particular type of training was deficient in some way, and that deficiency caused the Plaintiff's harm.  Plaintiff alleged that her civil

rights were violated because the Abington Chief of Police and the Township of Abington failed to properly train the Defendant Police Officers to properly deal with persons afflicted with Plaintiff's condition. In order to prove a failure to train claim, Plaintiff must show that the failure to train on the part of Defendants amounted to deliberate indifference to the rights of persons with whom police come into contact. City of Canton, Ohio v. Harris, 489 U.S. 378, 392 (1989). In the present case, Plaintiff provided evidence, that if believed, might lead to the conclusion that Abington Police Department members were not properly trained in how to recognize and seek treatment for persons affected with mental and emotional impairments like Plaintiff's bipolar disorder.[4] Ignoring ongoing hysterical behavior, for over three hours until Plaintiff made a suicidal gesture could be considered "deliberate indifference." However, Defendants are correct in asserting that Plaintiff failed to provide any evidence that there was an actual policy or lack of policy in place that the Abington Police department required training to deal with persons with mental or emotional disorders. Therefore, Defendants' Motion as to Count VII is granted.

**IV. Conclusion**

For the foregoing reasons, Defendants' Motion for Reconsideration is granted.

---

[4] Plaintiff, her fiancé Mr. Grob, and Defendant Officer Nisbet all agree to some degree on the following facts: Plaintiff's hysterical crying and screaming began when she was maced during her arrest and continued throughout the time she was transported to the police station. (Pl.'s Opp. to Defs. Abington Township, et al's Mot. For Summ. J. Ex. B at 21-22; Defs. Abington Memorial Hosp., et al's Mot. for Summ. J. Ex. A at 29.) After Plaintiff's arrival at the Abington Police Station, Plaintiff was seen naked from the waist up, screaming and crying, arms by her side, during the time when Defendant Police Officers were spraying her with water. (Pl.'s Opp. to Defs. Abington Township, et al's Mot. for Summ. J. Ex. B at 24-25.) It was not until Plaintiff stood on the sink in her cell and tied a string around her neck that the Abington Police Department called for an ambulance to take her to the hospital. (Defs. Abington Memorial Hosp., et al's Mot. for Summ. J. Ex. A at 35.)

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CANDACE RAY | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 02-4382 |
| | : | |
| v. | : | |
| | : | |
| ABINGTON TOWNSHIP, CHIEF OF POLICE WILLIAM KELLY, POLICE OFFICER NISBET, POLICE OFFICER J. KING, POLICE OFFICER BRUCE HASLAM, OFFICER MATZ, OFFICER RAWTZ, OFFICER SCHOLL, OFFICER MANN AND ABINGTON MEMORIAL HOSPITAL AND MARK SCHNEE | : | |
| Defendants | : | |

ORDER

AND NOW, this 7th day of July, 2004, upon consideration of Defendants Abington Township et al's Motion for Reconsideration (Docket No. 31), and Plaintiff's failure to respond to this motion, it is hereby **ORDERED** that Defendants' Motion for Reconsideration is **GRANTED** as to Counts II, V, and VII and the Court's order of May 27, 2004 is Vacated regarding those aforementioned Counts. Judgment is entered in favor of Defendants on Counts II, V, and VII..

BY THE COURT:

_____
RONALD L. BUCKWALTER, S.J.