IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CANDACE RAY | : | CIVIL ACTION |
| | : | |
| Plaintiff | : | |
| | : | 02-CV-04382 |
| v. | : | |
| | : | |
| ABINGTON TOWNSHIP, | : | |
| CHIEF OF POLICE WILLIAM KELLY, | : | |
| POLICE OFFICER NISBET, S., | : | |
| POLICE OFFICER J. KING, | : | |
| POLICE OFFICER BRUCE HASLAM, | : | |
| POLICE OFFICER MATZ, | : | |
| POLICE OFFICER RAWTZ, | : | |
| POLICE OFFICER SCHOLL, | : | |
| POLICE OFFICER MANN, | : | |
| ABINGTON MEMORIAL HOSPITAL, and | : | |
| MARK SCHNEE | : | |
| | : | |
| Defendants | : | |
| | : | |

**TRIAL BRIEF OF DEFENDANTS,
ABINGTON MEMORIAL HOSPITAL AND MARK SCHNEE**

Defendants, Abington Memorial Hospital and Mark Schnee, by their attorneys, White and Williams, LLP, respectfully submit the following brief in order to assist the Court with regard to the clarification of the issues and Defendants' arguments expected to be raised at trial and respectfully submit that the anticipated evidence and law will support a judgment for the Defendants Abington Memorial Hospital and Mark Schnee.

**I.   PROCEDURAL POSTURE OF THE CASE**

Plaintiff filed the instant federal and state law action against the above-captioned Defendants. Plaintiff filed an Amended Complaint on March 18, 2003. The claims asserted against Defendants, Abington Memorial Hospital (AMH) and its employee, Mark Schnee, in the Amended Complaint are based solely on Pennsylvania state law. Specifically, the Amended

Complaint states the following causes of action against Defendants, AMH and Mark Schnee: assault and battery (Count III); medical negligence (Count VIII); false imprisonment (Count IX); violation of the Pennsylvania Mental Health Procedures Act (MHPA) (Count X); and invasion of privacy (Count XI).

Defendants, AMH and Mark Schnee filed a Motion for Summary Judgment at the close of discovery seeking dismissal of all claims against them. In an Order dated May 27, 2004 and Memorandum Opinion dated May 25, 2004, the Court granted Defendants, AMH and Mark Schnee Summary Judgment on all claims, except certain alleged violations of the Pennsylvania Mental Health Procedures Act (Count X of the Amended Compliant). A copy of the Court's Order of May 27, 2004 and Memorandum Opinion of May 25, 2004 are attached hereto as Exhibit "A" and incorporated by reference as if fully set forth herewith at length. In its Order and Memorandum Opinion, the Court further held that Plaintiff's claims that she was unlawfully restrained and overmedicated at AMH do not form the basis for liability under Pennsylvania's MHPA (See, Exhibit "A" at 14-15). Accordingly, Plaintiff's only claim remaining for trial against Defendants, AMH and Mark Schnee is their alleged disclosure of confidential medical information in violation of the Act (See, Exhibit "A" at 16).

## II.     LEGAL ARGUMENT

### A.     ISSUE

Whether Plaintiff, Candace Ray, should prevail on her claim that Defendants, Abington Memorial Hospital and Mark Schnee, violated the confidentiality provision of Pennsylvania's Mental Health Procedures Act in disclosing information about her mental health to Abington Township police officers. (See, Count X, Plaintiff's Amended Complaint).

**B.    SUMMARY OF ARGUMENT**

The Plaintiff cannot establish the statutory elements necessary to prove a violation of the Pennsylvania Mental Health Procedures Act confidentiality provision because she cannot prove that documents concerning her mental health treatment were released or that their contents were disclosed. Alternatively, even if a disclosure was made, the circumstances under which any disclosure may have been made qualify as an exception to the rule against disclosure pursuant to Pennsylvania common law. Consequently, the claims made against Defendants, Abington Memorial Hospital and Mark Schnee, are meritless and should be dismissed by the Court as a matter of law.

**C.    STATEMENT OF FACTS**

Plaintiff, Candace Ray, brings this action in the United States District Court for the Eastern District of Pennsylvania alleging civil rights violations and various state law tort claims with respect to a series of incidents which occurred on July 2, 2000 and for a period of approximately 3 weeks thereafter. The majority of the events and claims revolve around the actions and conduct of the co-defendants, Abington Township, Abington Police Department, and 8 individual Abington police officers. The claims against Abington Memorial Hospital (AMH) and its crisis clinician, Mark Schnee, arise from Plaintiff's admission to the Emergency Trauma Center on July 2, 2000. Prior to July 2, 2000, the Plaintiff had a history of interactions with the Abington Police Department (APD). Plaintiff also had previous contacts with AMH, including an emergency room admission for a drug overdose on May 11, 1999, at which time she was evaluated by Mark Schnee. The Plaintiff previously had what she felt was a "negative experience" with Mark Schnee when her fiancée's mother was admitted to the AMH Psychiatric

Unit. Although these prior contacts do not give rise to the instant claims, they are relevant with respect to the Plaintiff's state of mind upon her admission to the emergency room on July 2, 2000.

On July 2, 2000, the APD was called to the home of the plaintiff due to a domestic dispute with her fiancée, Jon Grob. The Plaintiff was allegedly experiencing a bipolar episode at the time. The Plaintiff allegedly did not wish to press any charges against Jon Grob and requested that the police allow him to leave the premises voluntarily. Notwithstanding, Jon Grob was arrested. The Plaintiff appeared at Jon Grob's arraignment and allegedly disrupted the proceedings. She was asked to leave, and did so voluntarily. However, the Plaintiff returned to the District Court at which time she refused instructions from the APD to leave the premises, and was arrested. A scuffle ensued during the arrest and the Plaintiff attempted to drive off in her vehicle while an APD officer had part of his torso inside the car window. This resulted in the plaintiff being pepper sprayed, handcuffed and transported to the APD station. At the station, the Plaintiff claims she was verbally harassed. The Plaintiff alleges that she requested to be taken to the hospital because the pepper spray was burning her. The police officers testified that the Plaintiff was thoroughly hosed down at the station. The police officers testified that the Plaintiff attempted to hang herself in her cell, and that this prompted the transport to AMH.

Co-defendant APD officers, Nisbet and King, transported the Plaintiff to the emergency room while she was in custody. According to testimony from the officers and the emergency room records, the Plaintiff was uncooperative, assaultive, and generally out of control. This prompted the emergency room staff to place the Plaintiff in four point restraints, and to medicate her with 10 milligrams of Haldol IM. This resulted in a substantial diminution in the Plaintiff

agitation and combativeness, and it was documented that the Plaintiff exhibited no adverse affects to the potent anti-psychotic agent.

    The Plaintiff was evaluated by emergency room attending physician, David Theodorson, M.D. It was Dr. Theodorson's clinical impression that the Plaintiff was suffering from an acute exacerbation of her bipolar disorder with agitation. Dr. Theodorson requested that the on-duty crisis clinician, Mark Schnee, evaluate the Plaintiff. According to Mark Schnee's recollection, consult note, and testimony, the Plaintiff became loud, uncooperative, and made numerous threats of litigation upon seeing him. The Plaintiff apparently recognized Mark Schnee from her past encounters and became increasingly agitated in his presence. She categorically refused to answer any questions or provide Mark Schnee with any information, and often screamed at him. Accordingly, Mark Schnee did not perform any type of physical examination, and, essentially, was unable to conduct any type of mental health evaluation. During the emergency room visit, the police sought an involuntary mental health evaluation pursuant to § 7302 of the Mental Health Procedures Act. Mark Schnee provided the officers with a blank petition, which the officers completed. Upon receiving the completed petition, Mark Schnee filled in the pending charges and contacted Bob Bond from Montgomery County Emergency Services for pre-approval. Once Dr. Theodorson provided medical clearance, Mark Schnee discussed the case with Dr. Solomon at Building 50, and ambulance transportation was arranged for the transport. The Plaintiff was transported to Building 50 in Norristown, Pennsylvania, and did not have any further interaction with Mark Schnee. (Note that the Plaintiff did return to the emergency room for an allergic reaction on November 3, 2000 and delivered her daughter at AMH on June 10, 2001). During the emergency room admission on July 2, 2000, the Plaintiff claims that Mark Schnee advised the Abington Police Officers to "lock her up and throw away

the key." The Plaintiff further alleges that Mark Schnee revealed her medical, psychiatric and medication history to the officers, both verbally and by allowing them to view computerized medical records at a work station. In addition, the Plaintiff has alleged that Mark Schnee had her improperly restrained and that he conspired with the police officers to falsify hospital records and police reports in order to have the plaintiff involuntarily committed under the Mental Health Procedures Act. The Plaintiff has alleged that Mark Schnee assisted with the paperwork to procure the commitment. After her involuntary commitment at Norristown State Hospital, the Plaintiff was arraigned and brought back to the APD station before being transferred to Montgomery County Prison. Plaintiff has made a series of allegations concerning the events which transpired during this time frame, none of which have material relevance to AMH or Mark Schnee.

## D. ARGUMENT

### 1. *The Plaintiff Cannot Establish the Statutory Elements Necessary to Prove a Violation of the Pennsylvania Mental Health Procedures Act Confidentiality Provision*

The Pennsylvania Mental Health Procedures Act ("MHPA") confidentiality provision mandates that "[a]ll documents concerning persons in treatment shall be kept confidential and, without the person's written consent, may not be released or their contents disclosed to anyone[.]" PA. CONS. STAT. ANN. § 7111 (2004). See also Sprague v. Walter, 441 Pa. Super. 1, 656 A.2d 890 (Pa. Super. 1995). The case law is clear that the "core meaning" of the statute is to be strictly construed:

> Section 7111 of the Mental Health Procedures Act mandates that all documentation concerning persons in treatment be kept confidential, in the absence of patient consent, except in four limited circumstances. Specifically, section 7111 states: The unambiguous terms contained in the provision regarding the

confidentiality of medical records leaves little room for doubt as to the intent of the Legislature regarding this section. As noted above, "[a]ll documents concerning persons in treatment shall be kept confidential and, without the person's written consent, may not be released or their contents disclosed to anyone." 50 P.S. § 7111(a). The provision applies to all documents regarding one's treatment, not just medical records. Furthermore, the verbiage that the documents "shall be kept confidential" is plainly not discretionary but mandatory in this context--it is a requirement. The release of the documents is contingent upon the person's written consent and the documents may not be released "to anyone" without such consent. The terms of the provision are eminently clear and unmistakable and the core meaning of this confidentiality section of the Mental Health Procedures Act is without doubt-- there shall be no disclosure of the treatment documents to anyone. Zane v. Friends Hospital, 575 Pa. 236, 836 A.2d 25.

There is "virtually unanimous" case law[1] supporting the meaning and broad scope of the MHPA's confidentiality provision and it is clear that any disclosure will violate the statute unless it falls into one of the very limited exceptions:

> The only exceptions to this prohibition is if the person at issue has given written consent to the disclosure of the documents or if the disclosure falls into one of the four exceptions to the prohibition against disclosure...The first exception applies to those engaged in providing treatment for the person; the second exception applies to a county administrator with regard to administrative matters under the provisions of the Mental Health Procedures Act;

> [The third exception] permits disclosure to a court in the course of legal proceedings authorized by the Mental Health Procedures Act.

---

[1] See Zane v. Friends Hospital, 575 Pa. 236, 836 A.2d 25 (stating, "[o]ur conclusion regarding the meaning and broad scope of section 7111 is amply supported by the virtually unanimous case law interpreting this provision. *In the Interest of Roy*, 423 Pa.Super. 183, 620 A.2d 1172, 1173 (1993); *Commonwealth v. Moyer*, 407 Pa.Super. 336, 595 A.2d 1177, 1179 (1991); *Hahnemann University Hospital v. Edgar*, 74 F.3d 456, 463 (3d Cir.1996); *Ferrara v. Horsham Clinic*, 1994 WL 249741, at *1, 1994 U.S. Dist. Lexis 7578, at *2 (E.D.Pa. June 3, 1994); see also, *Christy v. Wordsworth-At-Shawnee, et al.*, 749 A.2d 557, 559-60 (Pa.Cmwlth.2000); *Johnsonbaugh v. Department of Public Welfare*, 665 A.2d 20, 26 (Pa.Cmwlth.1995); *Kakas v. Department of Public Welfare*, 65 Pa.Cmwlth. 550, 442 A.2d 1243, 1244-45 (1982); cf. *Leonard v. Latrobe Area Hospital*, 379 Pa.Super. 243, 549 A.2d 997, 998 (1988). But cf. *Fewell v. Besner*, 444 Pa.Super. 559, 664 A.2d 577 (1995)").

> 50 P.S. § 7111(a)(3). Again, by the clear terms of the statute, disclosure to a court is not permitted in any legal proceedings, but only in those legal proceedings authorized by the Mental Health Procedures Act.
>
> ...and the fourth exception applies pursuant to federal rules, statutes and regulations governing disclosure of patient information where treatment is undertaken in a federal agency. Id.

Accordingly, to prevail on her claim, the Plaintiff alleging violation of the confidentiality provision will have to show: (1) that there was no consent given to release documents containing her mental health information; (2) that documents containing mental health information were indeed released or that their contents were disclosed; and (3) that the disclosure was not made to: (a) one engaged in providing treatment; (b) the county administrator pursuant to section § 7110 (emergency mental evaluations); (c) a court in the course of a legal proceeding authorized by the act (commitment proceedings); or (d) pursuant to federal rules governing disclosure for treatment undertaken at a federal agency.

Defendant Schnee does not maintain that the Plaintiff consented to the release of her mental health information to the police officers, nor does he assert that the police officers qualify under one of the four statutory exceptions to warrant access to the Plaintiff's medical records. However, the evidence shows that the Plaintiff's claim must fail because of her inability to prove the most essential element of her claim – that documents concerning her mental health treatment were released or that their contents were disclosed.

The Plaintiff testified under oath that she never saw any of the police officers look at any documents; that all she saw was police officers standing around a computer at the nurses station in the emergency room; that she could not see the computer screen; that she could not identify the officers because the were "a good distance away;" and that she is "assuming" that Defendant,

Schnee was showing the police officers her records because she only heard "bits and pieces of what they were saying." (See, Deposition of Candace Ray at 98-104, 197).

The Defendant, Mark Schnee testified under oath that at no time did he discuss the Plaintiff's psychiatric history or her history of taking or not taking her medication with police officers; that he did not have access to the computers in the emergency room; and that although he interviewed the police officers to receive information, at no time did he give any information or reveal any of the Plaintiff's medical records to the police. (See, Deposition of Mark Schnee at 45, 56-57, 64-66).

Police officer Shawn Nisbet testified under oath that Mark Schnee never told him to "lock her up and throw away the key;" that Mark Schnee never revealed the Plaintiff's medical history to him; that Mark Schnee never revealed the Plaintiff's medication history to him; that he was never shown the Plaintiff's medical chart; and that Mark Schnee never showed him computerized records containing medical information on the emergency room computer. (See, Deposition of Shawn Nisbet at 233-234).

Police officer Jeanette King testified under oath that Mark Schnee never discussed the Plaintiff's medical history or psychiatric history with her and stated that although Mark Schnee told her that he was familiar with the Plaintiff, he never offered any opinion about the Plaintiff whatsoever. (See, Deposition of Jeannette King at 108-109). Police officer King also testified that Mark Schnee never told her to "lock her up and throw away the key;" that Mark Schnee never revealed the Plaintiff's medical history to her; that Mark Schnee never revealed the Plaintiff's medication history to her; that Mark Schnee never showed her the Plaintiff's medical chart and never showed her computerized records containing medical information on the emergency room computer. (See, Deposition of Jeannette King at 133-134).

Consequently, the evidence strongly indicates not only that Mark Schnee never revealed mental health treatment information to the police officers verbally, but also that it was impossible for him to have revealed information by way of computerized record because he did not have access to the medical records by way of the computer in the emergency room.

2. *Under Pennsylvania Common Law the Plaintiff Cannot Prove a Violation of the Pennsylvania Mental Health Procedures Act Confidentiality Provision*

Even if a disclosure was made, Pennsylvania courts have also recognized a fifth exception to the rule against disclosure when the release of information is necessary to prevent the risk of bodily injury or death to third parties or to the patient:

> [W]hile under the MHPA limited exceptions exist regarding the disclosure of privileged communications, none addresses a threat of serious harm to a third party. Again however, the MHPA's implementing regulations provide for nonconsensual release of confidential records "[i]n response to an emergency medical situation when release of information is necessary to prevent serious risk of bodily injury or death." 55 Pa.Code §5100.32(a)(9). While somewhat vague, these regulations have been interpreted to apply to threats of bodily injury or death to a third party. *Ms. B. v. Montgomery County Emergency Service, Inc.*, 799 F.Supp. 534 (E.D.Pa.1992), *aff'd* 989 F.2d 488 (3d Cir. 1993). See Emerich v. Philadelphia Center for Human Development, Inc., 554 Pa. 209, 720 A.2d 1032, (1998). But c.f. Commonwealth v. Fewell, 439 Pa. Super. 541, 654 A.2d 1109 (Pa. Super. 1995)(holding that the MHPA is to be strictly construed). [bold emphasis added].

Due to the fact that Plaintiff made suicidal gestures that included standing on top of a toilet and making hand motions using a string as if she were hanging herself, and because she had already injured at least two police officers earlier that day, any disclosure of limited medical information to the police was necessary in order: (1) make sure the police understood that they were dealing with someone suffering from a serious mental condition; (2) to make sure that the

officers who had the Plaintiff in custody took this into account in the way that they physically handled her should she continue to be violent while still in police custody at the hospital – both for the Plaintiff's safety and for that of the police officers; (3) to make sure the police understood that due to the Plaintiff's mental condition she was certainly capable of hurting herself or the police officers; and (4) to make sure the police understood the need to complete a petition to have the Plaintiff involuntarily evaluated pursuant to § 7302 of the MHPA in order to prevent her from remaining in police custody where she might attempt to commit suicide or attempt to further injure police officers.

### E.   CONCLUSION

The Plaintiff cannot establish the statutory elements necessary to prove a violation of the Pennsylvania Mental Health Procedures Act confidentiality provision because she cannot prove that documents concerning her mental health treatment were released or that their contents were disclosed. Alternatively, even if a disclosure was made, the circumstances under which any disclosure may have been made qualify as an exception to the rule against disclosure pursuant to Pennsylvania common law. Consequently, the claims made against defendants Abington Memorial Hospital and Mark Schnee are meritless and should be dismissed as a matter of law.

### III.   DAMAGES

Plaintiff has no monetary damages from the events set forth in this action and no wage loss claim. The Plaintiff has testified that she has no recollection of what happened on July 2, 2000 which eliminates any claim for emotional distress resulting from the events at issue. The eventual commitment to Building 50, under §7302 of the MHPA was warranted in that the psychiatrist at that facility confirmed that Plaintiff was a danger to herself. Plaintiff was found

guilty of defiant trespass as a result of her actions at the District Justice's office on July 2, 2002. Since Plaintiff does not have any legally cognizable damages, her claim must be dismissed as a matter of law.

## IV.   STIPULATIONS OF COUNSEL

The following Stipulations are requested:

1. Plaintiff, as a result of her actions on July 2, 2000, was convicted of defiant trespass;

2. The §7302 Evaluation of Plaintiff on July 2, 2000 was necessary in light of her then mental state, and a psychiatrist examined the Plaintiff on that date and committed her involuntarily;

3. The authenticity of Plaintiff's medical records from AMH relevant to Plaintiff's emergency room admission on July 2, 2000 and prior admissions.

## IV.   LEGAL ISSUES

It appears that plaintiff is representing herself *pro se* at trial. Accordingly, the Defendants request the Court to instruct Plaintiff that she is precluded from offering any evidence, testimonial or otherwise, against AMH and Mark Schnee with respect to her allegations of assault and battery, medical negligence, false imprisonment and invasion of privacy, all of which have been denied by this Court on Summary Judgment (See, Exhibit "A").

V.   **WITNESSES**

Please refer to the Witness List of Defendants, Abington Memorial Hospital and Mark Schnee, attached hereto as Exhibit "B."

VII.   **EXHIBITS**

Please refer to the Exhibit List of Defendants, Abington Memorial Hospital and Mark Schnee , attached hereto as Exhibit "C."

VIII.   **EXPERTS**

The Defendants offer Timothy Michals, M.D. as an expert in the field of psychiatry. The expert reports of Dr. Michals dated October 9, 2003 and November 12, 2003 are attached hereto as Exhibit "D."

IX.   **POINTS FOR CHARGE**

Please refer to the Proposed Points for Charge of Defendants, Abington Memorial Hospital and Mark Schnee, attached hereto as Exhibit "E."

Respectfully Submitted,

WHITE AND WILLIAMS, LLP

BY: _dz1411_____
DAVID R. ZASLOW, ESQUIRE
COUNSEL FOR DEFENDANTS,
ABINGTON MEMORIAL HOSPITAL
AND MARK SCHNEE
1500 Lancaster Avenue
Paoli, PA 19301
(610) 251-0466
Attorney I.D. No. 77782

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CANDACE RAY | : CIVIL ACTION |
| | : |
| Plaintiff | : |
| | : 02-CV-04382 |
| v. | : |
| | : |
| ABINGTON TOWNSHIP, | : |
| CHIEF OF POLICE WILLIAM KELLY, | : |
| POLICE OFFICER NISBET, S., | : |
| POLICE OFFICER J. KING, | : |
| POLICE OFFICER BRUCE HASLAM, | : |
| POLICE OFFICER MATZ, | : |
| POLICE OFFICER RAWTZ, | : |
| POLICE OFFICER SCHOLL, | : |
| POLICE OFFICER MANN, | : |
| ABINGTON MEMORIAL HOSPITAL, and | : |
| MARK SCHNEE | : |
| | : |
| Defendants | : |
| | : |

**CERTIFICATION OF SERVICE**

    I, David R. Zaslow, Esquire, attorney for Defendants, Abington Memorial Hospital and Mark Schnee, hereby certify that on the date set forth below, I caused a true and correct copy of the Defendants, Abington Memorial Hospital and Mark Schnee's, Trial Brief to be served upon the parties below named by hand delivery:

Candace Ray
1350 High Avenue
Roslyn, PA   19001

Joseph J. Santarone, Jr., Esquire
Marshall, Dennehey, Warner,
  Coleman & Goggin
One Montgomery Plaza
Suite 1002
Norristown, PA   19401

WHITE AND WILLIAMS LLP

By:  dz1411
David R. Zaslow, Esquire
Attorney for Defendants,
Abington Memorial Hospital and
Mark Schnee

Dated: November 1, 2004