**EXHIBIT "A"**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CANDACE RAY | : |
| | : |
| Plaintiff, | : CIVIL ACTION NO. 02-4382 |
| | : |
| v. | : |
| | : |
| ABINGTON TOWNSHIP, CHIEF OF POLICE WILLIAM KELLY, POLICE OFFICER NISBET, POLICE OFFICER J. KING, POLICE OFFICER BRUCE HASLAM, OFFICER MATZ, OFFICER RAWTZ, OFFICER SCHOLL, OFFICER MANN AND ABINGTON MEMORIAL HOSPITAL AND MARK SCHNEE | : |
| | : |
| Defendants | : |

## ORDER

AND NOW, this 27th day of May, 2004, upon consideration of Defendants Abington Township et al's Motion for Summary Judgment (Docket No. 22), Defendants Abington Memorial Hospital and Mark Schnee's Motion for Summary Judgment (Docket No. 21) and Plaintiff Candace Ray's Oppositions thereto (Docket Nos. 24 & 25). Defendants' Motions for Summary Judgment are **GRANTED** as to Count I for Defendant Police Officers Mann, and Rawtz, and Chief of Police Kelly; and **GRANTED** as to all Defendants for Counts III, VIII, IX, and XI. Defendants' Motions for Summary Judgment are **DENIED** as to Count I for Defendant Police Officers Nisbet, King, Haslam, Matz, and Scholl and **DENIED** as to all

18

Defendants on Counts II, IV, V, VI, VII, and X.

BY THE COURT:

_____

RONALD L. BUCKWALTER, S.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CANDACE RAY                             :
                                        :
       Plaintiff,                       :    CIVIL ACTION NO. 02-4382
                                        :
                                        :
       v.                               :
                                        :
                                        :
ABINGTON TOWNSHIP, CHIEF OF             :
POLICE WILLIAM KELLY, POLICE            :
OFFICER NISBET, POLICE OFFICER J.       :
KING, POLICE OFFICER BRUCE              :
HASLAM, OFFICER MATZ, OFFICER           :
RAWTZ, OFFICER SCHOLL, OFFICER          :
MANN AND ABINGTON MEMORIAL              :
HOSPITAL AND MARK SCHNEE                :
                                        :
       Defendants                       :

## MEMORANDUM

BUCKWALTER, S.J.                                                May 25, 2004

       Presently before the Court are Defendants' Motions for Summary Judgment, and Plaintiff's responses thereto. For the reasons set forth below, Defendants' motions are granted in part and denied in part.

**I. Background**

       According to the Plaintiff, the following events led to Plaintiff's present complaint. In July 2000, Plaintiff Candace Ray called the police to her house to intervene in a domestic dispute. As a result of this call, the Abington police arrested Jon Grob, Plaintiff's fiancé. Shortly thereafter, Plaintiff went to Mr. Grob's arraignment hearing and attempted to

stop the hearing by explaining that she was responsible for the alleged altercation, not Mr. Grob. The magistrate ordered Plaintiff to leave the courtroom, and Defendant Officer Nisbet of the Abington Police department escorted her out of the building, eventually convincing her to leave the premises in her car. Within a few minutes, Plaintiff returned, parking outside the courtroom window. Defendant Officer Nisbet went out to speak with Plaintiff and to place her under arrest. While speaking with Plaintiff, Defendant Officer Nisbet leaned his head and arms inside the passenger's side window of Plaintiff's car. When Plaintiff learned she was to be arrested, her car rolled forward, hitting Defendant Officer Nisbet. Defendant Officer Nisbet then dove inside the car, and attempted to stop Plaintiff from fleeing. Defendant Officer King soon joined Defendant Officer Nisbet in subduing Plaintiff. During the course of the struggle, Defendant Officer King sprayed Plaintiff with pepper spray. Defendant Officer Bruce Haslam allegedly instructed other officers responding to the scene via police radio. Throughout the time that the Defendant Police Officers were subduing her, Plaintiff was screaming and crying. This event caused Plaintiff to suffer a bipolar episode.

      Defendant Officer King and other officers placed Plaintiff under arrest and transported her in a police car to the Abington Police Station. Plaintiff requested she be taken to the hospital for treatment for the pepper spray still burning her skin. Instead, Plaintiff was placed in an open area, forced to strip in front of several male officers and various prisoners in nearby cells, and sprayed with a hose. During this time, Plaintiff cried and screamed, while the unidentified officers jeered and taunted her.[1] Afterward, Plaintiff was given a paper dress, and

---

[1] Plaintiff herself does not have an independent recollection of this event, however, Plaintiff's fiancé was brought through the area where Plaintiff was being hosed down and observed the incident. In his deposition, he states that he saw Plaintiff naked from the waist up, being sprayed with water. She was being told to remove the rest of her clothing and was taunted and insulted by 4 or 5 unidentified male police officers.

put in a cell. Six hours later, Plaintiff was taken to Abington Hospital.

According to hospital records, while at Abington Hospital, Plaintiff became violent and was placed in four point restraints. She was then given 10 mg of intramuscular Haldol to bring her out of her bipolar episode. When she came out of this episode, Plaintiff saw Defendant Mark Schnee talking to police officers at the nurses' station. She heard him tell the police officers to "lock her [Plaintiff] up and throw away the key." She also observed Defendant Mark Schnee revealing Plaintiff's medical history to the police officers, by reviewing her medical records on the computer at the nurses' station and she heard Defendant Mark Schnee tell the police officers that Plaintiff was not currently taking her medication and refused to take her medication. Soon after Plaintiff observed this exchange, she was involuntarily committed to the Montgomery County Emergency Services Building 50.

## II. Standard of Review

A motion for summary judgment will be granted where all of the evidence demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Since a grant of summary judgment will deny a party its chance in court, all inferences must be drawn in the light most favorable to the party opposing the motion. U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The ultimate question in determining whether a motion for summary judgment should be granted is "whether reasonable minds may differ as to the verdict." Schoonejongen v.

3

Curtiss-Wright Corp., 143 F.3d 120, 129 (3d Cir. 1998). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.

## III. Discussion

### a. Count I - Civil Rights Violations

Plaintiff brought suit against the following Defendants: Chief of Police William Kelly, Police Officer S. Nisbet, Police Officer J. King, Police Officer B. Haslam, Police Officer Matz, Police Officer Rawtz, Police Officer Scholl, and Police Officer Mann (collectively referred to as "Defendant Police Officers"). Specifically, Plaintiff alleges that Defendant Police Officers intentionally used excessive force and failed to provide Plaintiff with medical care for her serious medical condition, thereby violating her Constitutional rights under the Fourth and Fourteenth Amendments, 42 U.S.C. § 1983. Despite naming all the Defendant Police Officers in her complaint, the deposition evidence provided by both parties identifies only Defendant Officers Haslam, Nisbet and King as participating in any activity that might involve excessive force. Defendant Officer Haslam is only implicated as directing, via radio, the police response involved with Plaintiff's arrest. A police officer may be held liable for a violation of a Plaintiff's constitutional rights not only when he or she personally participates in the violation, but also if he or she "directs others to so violate, or had knowledge of and acquiesced in his [or her] subordinates' violations." Sharrar v. Felsing, 128 F.3d 810, 821 (3d Cir.1997). However, where the Plaintiff can not identify the alleged violators or where the Plaintiff cannot provide any evidence that superior officers knew and acquiesced to the subordinate officer's actions, those

officers cannot be held liable. In this case, although Plaintiff cannot identify any of the perpetrators, Defendant Nisbet named Defendant Officers Matz, Scholl and King as well as himself as being in the cellblock area while Plaintiff was being hosed off.[2] Plaintiff has not provided evidence that any of the other named Defendant Police Officers participated in, or had knowledge of and acquiesced to the alleged excessive force incidents or any of the other incidents detailed in Plaintiff's Amended Complaint. Therefore as to Defendant Officers Mann and Rawtz, Defendants' motion for Summary Judgment is granted on Count I. As to Chief of Police William Kelly, there is no evidence that he participated in any part of the arrest or detention of Plaintiff nor did Plaintiff provide any evidence that Defendant Chief of Police Kelly knew of and acquiesced to the level of force used in connection with her arrest and detention, therefore as to Chief Kelly, Defendants' Motion on Count I is granted. As to all other Defendants, Defendants' Motion on Count I is denied.

**b. Count II - Civil Rights Violation (Excessive Force)**

The second count of Plaintiff's Amended Complaint is against the Township of Abington for civil rights violations for repeatedly and knowingly failing to enforce the laws of the United States and allowing instead for Police Officers to employ excessive and illegal force. Under the United States Supreme Court holding in Monell v. Department of Social Services, 436 U.S. 658 (1978), a municipality may be held responsible for civil rights violations if the Plaintiff can prove that there was a longstanding custom or policy in place that had taken on the force of

---

[2] Defendant Officer Nisbet's account varies from Jon Grob's account in that the Defendant claims Plaintiff was clothed while being hosed down and does not recount any verbal abuse by the Defendant Officers.

law, and that a municipality employee, acting in accordance with that policy, violated the civil rights of the Plaintiff. Monell, 436 U.S. at 691-95. A municipality cannot be held liable for merely employing persons who commit tortious acts. There must instead be a causal link between the tortious act and the municipality's custom or policy. Beck v. City of Pittsburgh, 89 F.3d 966, 972 (3d Cir. 1996). In this case, there are several practices alleged by the Plaintiff that if proven to be a custom of established and condoned by Abington Township, would subject the township to liability. Specifically, if the Township's policy condoned the excessive use of pepper spray or if the Township's custom was that prisoners were to be stripped naked and hosed down in front of members of the opposite sex, then the Township would be liable to the Plaintiff. The Plaintiff has provided some evidence that such a policy exists, in the form of witness testimony describing the violations.[3] Therefore Defendants' motion as to Count II is denied.

c. **Count III - Assault and Battery**

Plaintiff's third count is against all defendants for assault and battery. In order to sustain a claim for assault, under Pennsylvania law Plaintiff must show that "Defendant intentionally caused an imminent apprehension of a harmful or offensive bodily contact in Plaintiff." Lakits v. York, 258 F. Supp. 2d 401, 407 (E.D. Pa. 2003). Although Plaintiff brought this assault charge against all Defendants, in her opposition brief, she only points to one incident, during which she claims Dr. Schnee told police officers to "lock her up and throw away the key." Dr. Schnee's words do not threaten imminent bodily harm, but rather imprisonment. Plaintiff

---

[3] Defs. Abington Township, et al's Motion for Summ. J. Ex. C (Dep. of Jon Grob) at 82-84, 92-99; Defs. Abington Township, et al's Motion for Summ. J. Ex. B (Dep. of Candace Ray) at 126-29.

offered no authority that a threat of imprisonment might be considered an assault, nor could this Court could find any authority supporting that proposition. Indeed, this Court finds that under no reasonable interpretation of the term could a threat of imprisonment cause an imminent apprehension of harmful bodily contact. Even if the Court were to agree, which it does not, that Plaintiff might come to bodily harm while imprisoned, there is still no threat of <u>imminent</u> bodily harm. This threat simply does not qualify as an assault.

Next, Plaintiff alleges that she suffered a battery caused by all Defendants. In Pennsylvania, to prove a claim of battery one must show that a "Defendant intended to cause a harmful or offensive contact to Plaintiff, and that such contact with Plaintiff resulted." <u>Lakits</u>, 258 F. Supp. 2d at 407. In the present case, Plaintiff alleges that she experienced a bipolar episode that lasted from the time she was arrested outside the Abington courthouse, until she awoke at Abington Hospital to discover herself in four point restraints. She has no recollection of any of the events that transpired during her bipolar episode. Despite Plaintiff's assertion that she could not have acted violently during her bipolar episode such that four point restraints were required because she has never acted violently in a hospital setting, two witnesses and hospital records state that she struck a nurse and had to be restrained. (Defs. Abington Hosp. et al's Mot. for Summ. J. Ex. A at 40, Ex. B at 26, Ex. C at 11). Thus, Defendants have provided evidence that Plaintiff's violent actions necessitated the restraints, and Plaintiff provides no evidence except her conjecture that she does not usually act in a violent manner in a hospital setting. This is not enough to create a genuine issue of material fact. Under the circumstances described, it is reasonable for Hospital personnel restrain a violent patient in order to provide medical care. <u>See</u>, <u>Collins v. Klotz</u>, No. Civ. A. 92-3772, 1994 WL 371479 (E.D. Pa. June 24, 1994) (holding that

7

the restraint and administration of anti-psychotic medication to a prisoner in the mental health wing of a prison was reasonably related to the state's interest in preventing harm to the inmate and others).

Plaintiff also alleges that she was given twice the legal dosage of intramuscular Haldol during her bipolar episode. Plaintiff did not provide expert testimony to substantiate this claim, rather she merely states within her deposition that a friend asked a doctor friend of his about the dosage of Haldol given to the Plaintiff. The doctor allegedly stated that given Plaintiff's weight, the 10mg dose given to Plaintiff by Abington hospital was two and a half times the limit. (Pl.'s Opp. to Defs. Abington Hospital, et al's Mot. for Summ. J. Ex. B at 26-27). This unsubstantiated allegation is not enough to create a genuine issue of material fact.

Finally, Plaintiff argues that her signed consent to treatment form was invalid because she signed it while in the throes of a bipolar episode and could not truly consent to treatment. Unquestionably, injecting Plaintiff with intramuscular Haldol without her consent would be a battery. Karibjanian v. Thomas Jefferson Univ. Hosp., 717 F. Supp. 1081, 1084 (E.D.Pa.1989). However, Plaintiff's argument fails here as well, because even in the absence of consent, physician may still treat a patient in an emergency situation without causing a battery. In Re Fiori, 543 Pa. 592, 601, 673 A.2d 905, 910 (1996) ("The doctrine of informed consent declares that absent an emergency situation, medical treatment may not be imposed without the patient's informed consent."). In the present case, Plaintiff exhibited a pattern of erratic and violent behavior that eventually led to medical personnel to place her in four point restraints. Plaintiff's violent behavior, a symptom of her bipolar episode, needed to be treated for her safety and the safety of others. In other words, the Plaintiff's condition caused the emergency that led

8

to her treatment with an injection of Haldol. Although, hospital staff were reasonable in assuming they had obtained Plaintiff's consent to treatment when she signed the consent form, even if that was invalid, Plaintiff's actions created an emergency situation wherein she needed to be treated.

For all the foregoing reasons, Defendants' Motions for Summary Judgment on Plaintiff's Assault and Battery claims are granted.

### d. Count IV - Violation of Substantive Due Process Rights

Count IV of Plaintiff's Amended Complaint alleges that Defendant Police Officers and the Township of Abington violated her substantive due process rights under the 14th Amendment and 42 U.S.C. § 1983. To make out a claim for violation of substantive due process, "the plaintiff must show that the state acted in a manner that 'shocks the conscience.'" Schieber v. City of Philadelphia, 320 F.3d 409, 417 (3d Cir. 2003) (quoting City of Sacramento v. Lewis, 523 U.S. 833 (1998)). There are at least some questions of fact regarding police actions, specifically Plaintiff's allegation of being stripped and hosed down in view of members of the opposite sex, that when determined would establish or negate a cause of action in this case. Therefore Defendants' Motion for Summary Judgment on Count IV is denied.

### e. Count V - Violation of Civil Rights

Defendants did not address this count in their Motion for Summary Judgment, therefore it stands.

9

**f. Count VI - Violation of Privacy**

In Count VI of her Amended Complaint, Plaintiff alleges Defendant Police Officers and the Township of Abington violated her constitutional right to privacy under the First, Fourth, and Fourteenth Amendments and 42 U.S.C. § 1983.

The Plaintiff's claim under the First Amendment right to peaceably assemble is not a privacy right. The First Amendment right to peaceably assemble is instead a right to congregate in a public place, so long as the participating parties do not obstruct the free passage. Shuttlesworth v. City of Birmingham, 382 U.S. 87, 91 (1965) ("Our decisions make it clear that the mere refusal to move on after a police officer's requesting that a person standing or loitering should do so is not enough to support the offense. . . . [T]here must also be a showing of the accused's blocking free passage . . . ."). In this case, however, the Plaintiff was ordered by Defendant Police Officers King and Nisbet to leave the premises, when she returned she was arrested and eventually found guilty of misbehavior in office. If Plaintiff wished to challenge her right to peaceably assemble outside the Abington courtroom where her fiancé was arraigned, she should have done so during her hearing on the misbehavior in office charge.

Plaintiff also alleges Defendants violated her Fourth Amendment privacy right by stripping her naked and hosing her down in front of five male police officers as well as an unknown number of male prisoners. Prisoners do not have an expectation of privacy in their prison cells. Warcloud v. Horn, No. Civ. A. 97-3657, 1998 WL 126917 (E.D. Pa. Mar. 17, 1998). Prisoners do not, however, shed all their constitutional rights at the prison gate and in fact, retain some limited rights to bodily privacy, so long as they do not interfere with legitimate penological interests. Grummett v. Rushen, 779 F.2d 491, 493 (9th Cir.1985) (citing Pell v. Procunier, 417

U.S. 817, 822 (1974)); <u>Johnson v. Pa. Bureau of Corrections</u>, 661 F. Supp. 425, 430 (W.D. Pa. 1987) (holding that prisoners had a constitutional right to privacy not to be viewed by guards of the opposite sex, although this right is not unlimited.). Plaintiff argues that the Abington Police Department had a practice of stripping female prisoners within view of male police officers and male prisoners. Although Defendants do not concede that this event occurred as Plaintiff alleges, there is at least a genuine question of fact as to whether it happened as the Plaintiff described. If it did occur, then it is hard to imagine how the circumstances described would serve a legitimate penological interest as alleged by the Defendants. It is true that there might be exigent circumstances which would require a female prisoner to be cleaned off under the supervision of one or at most two male police officers. However, there can be no legitimate reason for the presence of five police officers during such an event, nor for conducting it in full view of other prisoners of the opposite sex. Because there is a genuine question of fact concerning whether Plaintiff's version of events did in fact occur, Defendants' Motion for Summary Judgment on Count VI is denied.

**g. Count VII - Failure to Train**

Plaintiff further alleges that her civil rights were violated because the Abington Chief of Police and the Township of Abington failed to properly train the Defendant Police Officers to properly deal with persons afflicted with Plaintiff's condition. In order to prove a failure to train claim, Plaintiff must show that the failure to train on the part of Defendants amounted to deliberate indifference to the rights of persons with whom police come into contact. <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 392 (1989). In the present case, Plaintiff has

11

provided enough evidence, that if believed by a jury, may substantiate her civil rights claim. Plaintiff, her fiancé Mr. Grob, and Defendant Officer Nisbet all agree to some degree on the following facts: Plaintiff's hysterical crying and screaming began when she was maced during her arrest and continued throughout the time she was transported to the police station. (Pl.'s Opp. to Defs. Abington Township, et al's Mot. For Summ. J. Ex. B at 21-22; Defs. Abington Memorial Hosp., et al's Mot. for Summ. J. Ex. A at 29). After Plaintiff's arrival at the Abington Police Station, Plaintiff was seen naked from the waist up, screaming and crying, arms by her side, during the time when Defendant Police Officers were spraying her with water. (Pl.'s Opp. to Defs. Abington Township, et al's Mot. for Summ. J. Ex. B at 24-25). It was not until Plaintiff stood on the sink in her cell and tied a string around her neck that the Abington Police Department called for an ambulance to take her to the hospital. (Defs. Abington Memorial Hosp., et al's Mot. for Summ. J. Ex. A at 35). This sort of ongoing hysterical behavior, if proven, should have alerted someone to Plaintiff's altered mental state and need for medical assistance. Ignoring such behavior for over three hours until Plaintiff made a suicidal gesture could be considered "deliberate indifference." Therefore, Defendants' Motion as to Count VII is denied.

**h. Count VIII - Negligence**

Count VIII of Plaintiff's Amended Complaint alleges that Defendants Abington Memorial Hospital and Mark Schnee were negligent because there were "policies, practices and customs known to place persons with mental or emotional conditions in involuntary confinement without proper jurisdiction or legal authority." (Pl. Am. Compl. ¶ 125). In Pennsylvania, in

12

order to establish a claim for medical malpractice, a Plaintiff must show through competent medical testimony that:

    (a)    The defendant owed a duty to the plaintiff;

    (b)    The defendant breached that duty;

    (c)    That the breach of the duty was the proximate cause or substantial factor in causing harm to the plaintiff; and

    (d)    the plaintiff suffered damages as a direct result of the harm.

Mitzelfelt v. Kamrin, 584 A.2d 888, 891 (Pa. 1990). Defendants argue that because Plaintiff did not provide any expert medical testimony to establish all of the above the above, the Defendants should prevail. Plaintiff, in turn, argues that she is alleging Defendants were negligent in disclosing her medical records to the Defendant police officers, thereby violating her privacy. This is a wholly different argument from what her pleading alleges. Plaintiff has offered no evidence that there were negligent practices and customs that caused her to be involuntarily committed, as alleged in her Amended Complaint. For this reason, Defendants' Motion for Summary Judgment is granted on Count VIII.

**i. Count IX - False Imprisonment**

Count IX of Plaintiff's Amended Complaint alleges that all Defendants caused her to be falsely imprisoned against her will. Under Pennsylvania law, in order to make a case for false imprisonment, the Plaintiff must show that she was detained, and that such detention was unlawful. Pahle v. Colebrookdale Tp., 227 F. Supp. 2d 361, 374 (E.D. Pa. 2002) (citing Fagan v. Pittsburgh Terminal Coal Corporation, 299 Pa. 109, 149 A. 159 (1930)). The record indicates

13

the Plaintiff was lawfully arrested and eventually convicted of misbehavior in office. (Pl.'s Opp. to Defs. Abington Memorial Hospital, et al's Mot. for Summ. J. Ex. B at 39). Plaintiff did not mount a legal challenge to this charge, therefore her arrest during the commission of the offense was valid. In addition, as previously explained in section III (c), the is significant credible evidence that Plaintiff struck a nurse during her examination at Abington Memorial Hospital. Plaintiff has no memory of the event and provides no counter evidence to challenge the facts presented by other witnesses, her only argument is that she has never been violent towards hospital personnel before. There is no evidence that Plaintiff's subsequent restraint and involuntary commitment to a mental facility was anything other than a valid imprisonment under the law. Therefore, Defendants' Motion for Summary Judgment as to Count IX is granted.

### j. Count X - Violation of Pennsylvania Mental Health Act

Count X of Plaintiff's Amended Complaint alleges that all Defendants jointly and severally violated the Pennsylvania Mental Heath Procedures Act and Plaintiff's right to due process under the Fourth and Fourteenth Amendments. Under the Pennsylvania Mental Health Procedures Act, physicians, hospitals and peace officers are immune from civil liability for participating in the decision to have a person examined or treated, except where there is evidence of willful misconduct or gross negligence. Downey v. Crozer-Chester Medical Center, 817 A.2d 517, 524 (2003) (citing 50 P.S. § 7114(a)). Plaintiff alleges that the following actions violated the Pennsylvania Mental Health Procedures Act: Plaintiff was placed in four point restraints, Plaintiff was given two and a half times the limit of her medication, and finally, that Defendant Police Officers King and Nisbet looked at her private medical records and Defendant Schnee

14

disclosed that to the Defendant Police Officers that Plaintiff refused to take her medications and should be locked up and the key thrown away. As previously mentioned in this opinion, Plaintiff has failed to provide any evidence to substantiate either the unlawful restraint claim or the over-medication claim. As such, the Court finds that these two claims cannot form the basis for liability under the Pennsylvania Mental Health Procedures Act. As for the final allegation, Plaintiff testified in her deposition that she saw the Defendant Police Officers King and Nisbet looking at her medical record on the computer, and heard Defendant Schnee discussing her medical history, including her propensity not to take her medication, as well as making the statement that they should lock her up and throw away the key. Plaintiff's testimony about her first hand knowledge of these facts at least creates a genuine question of fact regarding whether these events took place as Plaintiff perceived them. The next question becomes whether, if all the facts are as Plaintiff alleges, that conduct rises to the level of gross negligence or willful misconduct. The Supreme Court in Bloom v. Dubois Regional Medical Center, 597 A.2d 671 (Pa.Super. 1991), held "that the legislature intended the term gross negligence to mean a form of negligence where the facts support substantially more than ordinary carelessness, inadvertence, laxity, or indifference. The behavior of the defendant must be flagrant, grossly deviating from the ordinary standard of care." Id. at 679. In Bloom, a husband and wife sued a psychiatrist and the manager of a psychiatric unit after the husband had discovered his wife hanging from shoestrings adjacent to her room in a failed suicide attempt. The couple charged that the psychiatrist and the manager of the psychiatric unit were both grossly negligent in failing to prevent her suicide attempt because upon admission she had expressed a desire to kill herself and sought treatment to prevent that from occurring. The trial court held that the defendants were immune from suit

15

under the Pennsylvania Mental Health Procedures Act, but the Supreme Court reversed and held that under the facts alleged in the complaint, such facts could be sufficient to give rise to a finding of gross negligence. In the present case, the facts alleged make a case, if proven, for invasion of Plaintiff's privacy through disclosure of her private medical history. In addition, if Plaintiff's version of events is believed, such disclosure was not inadvertent, but rather intentional and knowing. Under the Pennsylvania Mental Health Procedures Act, medical personnel have a duty not to disclose a patient's medical history to anyone except medical professionals during the course of treatment, the county administrator pursuant to particular sections of the act, the court in connection with legal proceedings authorized by the act and federal agencies if they are engaged in treating the patient. 50 P.S. § 7111 (2003). Defendant Police Officers King and Nisbet do not qualify under any of the above categories to warrant access to Plaintiff's medical records. Therefore, an intentional disclosure of Plaintiff's medical history, if the jury determines that did in fact occur, could rise to the level of gross negligence or willful misconduct. For this reason, Defendants' Motion for Summary Judgment as to Count X is denied.

### k. Count XI - Invasion of Privacy

Plaintiff concedes that Count XI should be dismissed because it was brought after the statute of limitations expired. Therefore Defendants' Motion for Summary Judgment as to Count XI is granted.

### IV. Conclusion

16

For the foregoing reasons, Defendants' Motions for Summary Judgment are granted as to Count I for Defendant Police Officers Mann, and Rawtz, and Chief of Police Kelly; Count III for all Defendants; Count VIII for all Defendants, Count IX for all Defendants, and Count XI for all Defendants. Defendants' Motions for Summary Judgment are denied as to Count I for Defendant Police Officers Nisbet, King, Haslam, Matz, and Scholl. Defendants' Motions for Summary Judgment on Counts II, IV, V, VI, VII, and X are denied.